IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | CASE NO.: 1:21-cr-491 |
| ) | |
| Plaintiff ) | JUDGE J. PHILIP CALABRESE |
| ) | |
| vs. ) | |
| ) | **DEFENDANT'S APPEAL OF MAGISTRATE** |
| **PAUL SPIVAK** ) | **JUDGE'S DETENTION ORDER AND** |
| ) | **REQUEST FOR IMMEDIATE RELEASE** |
| Defendant ) | **WITHOUT CONDITIONS** |
| ) | **(HEARING REQUESTED)** |

Now comes the Defendant, PAUL SPIVAK, by and through undersigned Counsel, and hereby respectfully moves this Honorable court to vacate Magistrate Judge Greenberg's detention order citing "Defendant's residence was not amenable to the home detention component of release, the bond as previously ordered is revoked."

I.      HISTORY AND BACKGROUND

Defendant Spivak was arrested on a Complaint on or about June 8, 2021.  Defendant appeared before Magistrate Judge Greenberg and pled Not Guilty.  The Government moved for detention citing he was a flight risk and a danger to obstruction.  Further, the Government alleged he had multiple weapons at his home.  The case was set for a Detention Hearing on June 11, 2021.

Prior to the hearing, the parties reached an agreement.  First, the Defendant voluntarily allowed the FBI to search his home for firearms.  The search resulted in at least fifteen FBI employees and/or agents searching the Spivak home.  The Spivak home turned over approximately 21-22 weapons.  Second, on the heels of this, the parties agreed to a $600,000.00 bond secured by 10% ($60,000.00) with special conditions.  The special conditions were primarily house detention with permission to go to work during daytime hours.  The agreement was accepted by the Court with the condition that Pre-trial Services would inspect the home for suitability.

On or about June 16, 2021, Pre-trial Services notified the Court that the home was not suitable - the location lacked the internet ability to support home detention.[1] On June 18, 2021, Defendant Spivak requested a hearing on detention indicating he had met all conditions and had new internet equipment installed at the home (See Exhibit A.)

On or about June 21, 2021, the AUSA filed a motion to reopen detention hearing citing in part, "…the Government learned of and is investigating an incident intended to intimidate a witness in connections with this case.  Based on the latest information, and the Government's prior concern regarding the information included in the Pre-trial Services Report, the Government…seeks Defendant's continued detention…."

It is important to note that the report was issued and simply stated, "There is no condition or combination of conditions that will reasonable assure the appearance of the Defendant as required and the safety of the community." (See Exhibit B.)

A detention hearing was then set for June 28, 2021 as well as an arraignment.  Further, the Court ordered Pre-trial Services to conduct another home inspection.

II.    FACTS OF DETENTION HEARING

The Court called Pre-trial Officer Stolarik.  Defendant was limited in what he was allowed to ask the officer but what was clear is that no one with any expertise had tested the Spivak home to determine whether it was suitable for the home detention equipment.  The Government chose not to call witnesses but instead proffered the facts:

1. Defendant had traveled to Russia in the past.

2. Defendant was being investigated for an incident wherein someone left dead mice on a "potential witness' porch".

---

[1] To date, no such expert report, testimony or other document has been provided to support his claim.

3. Defendant has sold his business and received a lot of money.

4. Defendant had a van that was allegedly an "armageddon" vehicle.

The Defense called FBI Agent Anthony Fry who in part indicated that there was no evidence at the time of the hearing to connect Paul Spivak to any mice incident. In fact, to date Counsel has not even seen a report verifying said occurrence.

Next, Defendant called Steven Eisenberg who testified he and another employee attempted to get a letter of recommendation for Paul Spivak to be used at any proceeding.

Finally, the last witness was Paul Spivak who indicated he did not have anything to do with said mice. He had not travelled to Russia since approximately 2008. He had a well established business, a home, a wife, and a three year old at home.

III     <u>THE BOND STATUTE ONLY AUTHORIZES PRETRIAL DETENTION AND A DETENTION HEARING WHEN ONE OF THE SEVEN FACTORS LISTED IN 3142(f) IS MET</u>

Paul Spivak is being detained in violation of the law because none of the seven §3142(f) factors are met.[2] Supreme Court precedent and the plain language of the statute prohibit the court from holding a detention hearing and detaining a defendant for even one day when no §3142(f) factor is present. Six courts of appeal as well as district courts in the circuit concur.

    A.     SUPREME COURT LAW

In *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Supreme Court upheld the Bail Reform Act, 18 U.S.C. §3142, over a Fifth Amendment substantive Due Process challenge in part on

---

[2]This case does not meet any of the five factors discussed in §3142(f)(1), as it does not involve: (1) a crime of violence under (f)(1)(A); (2) an offense for which the maximum sentence is life imprisonment or death under (f)(1)(B); (3) a qualifying drug offense under (f)(1)(C); (4) a felony after conviction for two or more offenses under the very rare circumstances described in (f)(1)(D); or (5) a felony involving a minor victim or the possession/ use of a firearm under (f)(1)(E). The government has also not presented any evidence to establish that this case meets either of the two additional factors discussed in §3142(f)(2): (1) a "serious risk that [the defendant] will flee" under (f)(2)(A); or (2) a "serious risk" that the defendant will engage in obstruction or juror/witness tampering under (f)(2)(B)

the grounds that detention hearings could be held *only* under the limited circumstances set out in §3142(f). As the *Salerno* court held: "[t]he Bail Reform Act *carefully limits the circumstances under which detention may be sought* to the most serious crimes. *See* 18 U.S.C. §3142(f) (*detention hearings available if* case involves crime of violence, offenses for which the sentence is life imprisonment or death, serious drug offenders, or certain repeat offenders)." *Salerno*, 481 U.S. at 747 (emphasis added). The Supreme Court thus held that the factors listed in §3142(f) serve as a gatekeeper. Only certain categories of defendants are eligible for detention at all, and the government is definitively prohibited from seeking detention if no (f) factor is met. Likewise, *Salerno* makes clear that when no §3142(f) factor is present, a court is prohibited from holding a detention hearing and is required to release the defendant on conditions.

The constitutionality of the Bail Reform Act depends on this gatekeeping function of §3142(f). If courts detain defendants without regard to the limitations in §3142(f), the Act as applied becomes unconstitutional. In holding that the Act did not violate substantive Due Process, the *Salerno* Court focused on the fact that §3142(f) "carefully limits the circumstances under which detention may be sought." *Id*. At 747. It was these limitations in 3142(f), and several other aspects of the Act, that led the Court to conclude that the Act was "regulatory in nature and does not constitute punishment before trial in violation of the Due Process Clause." *Id* at 748. The *Salerno* Court further relied on the limitations in §3142(f) in another component of its substantive Due Process ruling, its conclusion that "the government's interest in preventing crime by arrestees is both legitimate and compelling. "To reach this conclusion, the Court contrasted the Bail Reform Act with a statute that "permitted pretrial detention of any juvenile arrested on any charge" by pointing to the gatekeeping function of §3142(f): "The Bail Reform act, in contrast, narrowly focuses on a particularly acute problem in which the

Government interests are overwhelming.  The Act operates **_only_** on individuals who have been arrested for a specific category of extremely serious offenses.  18 U.S.C. §3142(f)." *Id.* at 750 (emphasis added).

    B.    THE PLAIN LANGUAGE OF §3142(f)

The gatekeeping role of §3142(f) plays is also clear from the plain language of the statute. Subsection 3142(f) says, "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in §3142(f)(1) & (f)(2).  Moreover, the plain language of §3142(e) authorizes a judge to "order the detention of the person" only "afer a [detention] hearing pursuant to the provisions of subsection (f) of this section."

The Bail Reform Act is difficult to parse because the statute is not organized in the order in which detention issues arise in court.  Instead, the first pretrial release issue to arise at the Initial Appearance hearing - whether there is a legal basis for detention - is not addressed until §3142(f), which comes halfway through the statute.  To make matters worse, §3142(f) itself is confusing, in that it is entitled "Detention Hearing" but in fact speaks to *both* the legal standard that applies at the Initial Appearance hearing and to the legal standard that applies at the Detention Hearing.  The first sentence of §3142(f) lays out the legal standard that must be met at *the Initial Appearance* before a court can detain a defendant, introducing the limited circumstances under which "the judicial officer shall hold a hearing" - meaning a detention hearing.  If none of the 7 circumstances enumerated in §3142(f) are present *at the Initial Appearance*, the judge is not authorized to hold a detention hearing or detain the defendant at all.  Confusingly, the first sentence of §3142(f) then goes on to reference the legal standard that applies *at the Detention Hearing*, explaining that the purpose of the Detention Hearing is to determine whether any condition or combination of conditions set forth in subsection (c) of this

section will reasonably assure the appearance of such person as required and the safety of any other person and the community." The long paragraph in §3142(f) that follows §3142(f)(2)(B) describes the procedures that apply at the Detention Hearing in depth.

    C.      CIRCUIT AND DISTRICT COURT CASELAW

Following the Supreme Court's guidance in *Salerno*, six courts of appeals agree that it is illegal to detain a defendant - or even hold a detention hearing - unless the government establishes one of the factors listed in 18 U.S.C. §3142(f); *See, e.g., United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988); *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Himler*, 797 F. 2d 156, 160 (3d Cir. 1986); *United States v. Byrd*, 969 F. 2d 106, 109 (5th Cir. 1992); *United States v. Twine,* 344 F.3d 987 (9th Cir. 203); *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999).

When the government requests detention at an initial appearance hearing, the judge must first determine whether there is a permissible statutory basis for detention under §3142(f) *See Friedman*, 837 F.2d at 48 ("A motion seeking such detention is permitted only when the charge is for certain enumerated crimes . . . or when there is a serious risk that the defendant will flee, or obstruct or attempt to obstruct justice.") (citing 18 U.S.C. §3142(f)(1)-(2)); *Byrd*, 969 F. 2d at 109 ("A hearing can be held only if one of the . . . circumstances listed in (f)(1) and (f)(2) is present."). Unless the statutory threshold set out in §3142(f) is met, "detention is not an option." *Singleton*, 182 F. 3d at 9; *Byrd*, 969 F.2d at 109 ("Detention can be ordered, therefore, only in a case that involves one of the . . . circumstances listed in (f).").

Unfortunately, a cultural norm has developed that contravenes the Bail Reform Act and *Salerno* and results in defendants being illegally detained in violation of the statute and their constitutional rights. Specifically, at virtually every initial appearance hearing where the government

is requesting detention, the Assistant United States attorney asserts that the defendant is either "a danger to the community," "a risk of flight" or both. However, neither "danger to the community" nor ordinary "risk of flight" is a factor listed in §3142(f).

IV. <u>IT IS ILLEGAL TO DETAIN PAUL SPIVAK AS A DANGER TO THE COMMUNITY</u>

First, the plain text of §3142(f) does not authorize detention on generalized dangerousness grounds. Second, interpreting the Bail Reform Act to authorize detaining someone for being a "danger to the community," although the "danger to the community" is not listed in §3142(f), would contradict *Salerno* and render the Act unconstitutional under the Fifth Amendment. Third, the same six courts of appeals that hold that there must be a §3142(f) factor present to justify detention also uniformly agree that "the statute does not authorize detention of the defendant based on danger to the community." *Himler*, 797 F.2d at 160; *see also Byrd*, 969 F.2d at 110 ("[A] defendant's threat to the safety of other persons or to the community, standing alone, will not justify pre-trial detention."); *Friedman*, 837 F. 2d at 49 ("[T]he Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated [in the statute].") *Ploff*, 851 F2d. At 9-12; *Singleton*, 182 F.3d at 9 (citing *Ploof,* 851 F.2d at 11); *Twine*, 344 F.3d at 987 (agreeing with *Himler, Ploof, and Byrd).* See also *United States v. Butler*, 165 F.R.D. 68,71 (N.D. Ohio 1996).

Without a §3142(f) factor present, the court may not detain defendant as a danger to the community. *See Friedman*, 837 F. 2d at 49 ("The Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice, or an indictment for the offenses enumerated [in §3142(f) (1)].").

V. <u>IT IS ILLEGAL TO DETAIN PAUL SPIVAK AT ALL BECAUSE THE GOVERNMENT HAS NOT PRESENTED EVIDENCE THAT PAUL SPIVAK POSES A "SERIOUS RISK" OF FLIGHT.</u>

It was improper to detain Paul Spivak on the Government's bare allegation that he poses a "risk of flight" because that is not a factor enumerated in §3142(f). By its plain language, §3142(f)(2)(A) permits detention and a hearing only when a defendant poses a "*serious* risk" of flight. The Supreme Court require courts to follow a very basic canon of statutory interpretation: "We must read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous" (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)

Moreover, where the government's only legitimate §3142(f) ground for detention is "serious risk" of flight, the government bears the burden of presenting *evidence* to support its allegation that a defendant poses a "serious risk" of flight rather than the ordinary risk attendant in any criminal case. "When . . . the safety of the community is not at issue, a court must first determine whether the government has shown, by a preponderance of the evidence, the existence of a *serious risk* that the defendant will flee." *United States v. Martinez-Patino*, 2011 WL 902466, at *3 (N.D. Ill. March 14, 2011) (emphasis added).

In order to detain a defendant as a "serious risk" of flight under 3142(f)(2)(A), the government must present evidence that the defendant presents an "extreme and unusual" risk of willfully fleeing the jurisdiction if released. Because the government has not met its burden in this case, Paul Spivak may not be detained under 3142(f)(2)(A).

    A.    THE LEGISLATIVE HISTORY OF THE BAIL REFORM ACT MAKES CLEAR THAT DETAINING A DEFENDANT AS A "SERIOUS RISK OF FLIGHT" IS APPROPRIATE ONLY IN "EXTREME AND UNUSUAL CIRCUMSTANCES."

While §3142(f)(2) does not spell out the standard of proof for "serious risk" of flight, the legislative history of the Bail Reform Act unequivocally demonstrates that Congress intended "serious risk of flight" to be a very demanding standard, and expected courts to detain on that ground only in "extreme and unusual circumstances." The Senate and the House Judiciary Committee reports concur that:

> Under subsection [3142]f(2), a pretrial detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. The first two types of cases, those involving either a serious risk that the defendant will flee, or a

> serious risk that the defendant will obstruct justice, or threaten, injure, or intimidate a prospective juror or witness, or attempt to do so, *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.

Bail Reform Act of 1983: Report of the Committee on the Judiciary, S. Rep. No. 98-147, 98th Cong, 1st Sess. 48 (1983) (emphasis added). The footnote accompanying this text points to *United States v. Abrahams*, where the First Circuit held that, before detaining a defendant as a risk of flight, the government must show that a "rare case of extreme and unusual circumstances exists" at 8 (emphasis added); *see also Gavino v. McMahon,* 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances exists"); *United States v. Kirk* 534 F.2d 1262, 1281 (8th cir. 1976) (holding that bail can only be denied "in the exceptional case.").

Applying this rule to the defendant in *Abrahams*, the court articulated that the Defendant he was an escaped state prisoner from New Jersey, and a fugitive from state court in California where he had jumped bail after giving a false last name. 575 F.2d at 4. He was a serial impersonator with multiple known aliases, and three previous convictions in state and federal court. At his original bail hearing in this case he had given a false name and lied about his criminal history, had originally failed to appear, and to top it all off, had recently transferred 1.5 million dollars to Bermuda. *Id.* Under these extreme facts the court *deliberated* before finally holding that "[t]his is the rare case of extreme and unusual circumstances that justifies pretrial detention without bail."

By incorporating the *Abrahams* standard into "serious risk of flight," Congress painted a clear picture of the kind of extreme factual circumstances required to even merit a detention hearing on the ground of serious risk of flight under §3142(f)(2). To interpret "serious risk of flight" as an ambiguous, undemanding catchall term, or to conflate it with "risk of non-appearance" is to deliberately ignore Congress' intended limitations.

B. THE GOVERNMENT HAS NOT MET ITS BURDEN TO SHOW THAT PAUL SPIVAK REPRESENTS AN "EXTREME AND UNUSUAL" RISK OF FLEEING THE JURISDICTION.

In order "to show that there is a serious risk that a defendant will flee, the government must show that the defendant would seek to leave [the jurisdiction] through some type of voluntary act." *Marinez-Patino*, 2011 WL 902466, at *12 (citations omitted). The only defendants who qualify for detention under 3142(f)(2) are those "[t]rue fligh risks" – defendants the government can prove are likely to wilfully flee the jurisdiction with the intention of thwarting the judicial process. *See, e.g.,* Lauryn Gouldyn, *Defining Flight Risk*, 85 U. Chi. L. Rev. 677, 724 (2017).

An amorphous risk of local nonappearance does not rise to the level of a *serious* risk of flight. "[T]o conflate risk of flight and assuming appearance would have the effect of reading out of the BRA the threshold showing that there is a serious risk that the defendant will flee." *Marinez-Patino*, 2011 WL 902466, at *5 (holding that defendant facing deportation was not a serious flight risk under §3142(f)(2)(A)). The government must present evidence that the defendant will fail to appear because they have intentionally fled the jurisdiction.

In this case, the government has not offered any sufficient evidence that defendant presents a serious risk of willfully fleeing the jurisdiction.

C. THE GOVERNMENT HAS NOT PRESENTED "EXTREME AND UNUSUAL CIRCUMSTANCES" AND HAS NOT MET ITS BURDEN TO PROVE THAT DEFENDANT PRESENTS A "SERIOUS RISK" OF FLEEING THE JURISDICTION UNDER §3142(f)(2)(A).

Paul Spivak must be released immediately on conditions because the government did not present any evidence whatsoever to establish that "there is a serious risk that the [defendant] will flee" the jurisdiction under §3142(f0(2)(A). Although the defense bears no burden of proof, it is clear from Paul Spivak's history and characteristics that he does not pose a serious risk of flight.

Because Paul Spivak does not present a "serious risk" of flight, neither §3142(f0(I) nor §3142(f)(2) is satisfied, a detention hearing is not authorized, and he cannot be detained under law.

The potential penalty in his case is not a legitimate basis for finding a serious risk of flight. There is no evidence Congress intended courts to de facto detain any client facing a long prison sentence. Indeed, many federal defendants face long sentences – being a defendant in a run-of-the-mill federal case cannot possibly be an "extreme and unusual circumstance." Even at the detention hearing, where the standard for finding risk of flight is lower, Congress did not authorize courts to evaluate potential penalty when considering risk of flight. *See* §3142(g) (listing as relevant factors the nature and seriousness of the charge, (2) the weight of the evidence against the defendant, and (3) the history and characteristics of the defendant); *Friedman*, 837 F. 2d at 50 (in "cases concerning risk of flight, we have required *more* than evidence of the commission of a serious crime and the fact of a potentially long sentence to support finding risk of flight") (emphasis added).

Because defendant does not present a "serious risk" of flight, neither §3142(f)(I) nor §3142(f)(2) is satisfied, a detention hearing is not authorized, and he cannot be detained under the law.

VI. CONCLUSION

For these reasons, Defendant, Paul Spivak, respectfully asks this Court to vacate the detention order and order him released without conditions. Because the government has provided no permissible basis for pretrial detention under §3142(f), continuing to detain defendant violates the law.

> Respectfully submitted,
>
> /S/ KEVIN M. SPELLACY
> **KEVIN M. SPELLACY (0042374)**
> 323 W. Lakeside Avenue, Suite 200
> Cleveland, Ohio  44113-1306
> Phone: (216) 344-9220
> Fax:    (216) 664-6999
> E-mail: kspell@mghslaw.com
>
> COUNSEL FOR DEFENDANT
> PAUL SPIVAK

## **CERTIFICATE OF SERVICE**

  A copy of the foregoing has been forwarded, via the Court's electronic filing system, to all listed parties on the portal, on this 12th day of July, 2021.

               /S/ KEVIN M. SPELLACY
               **KEVIN M. SPELLACY (0042374)**