UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-cr-491 |
| | ) | |
| | ) | JUDGE J. PHILIP CALABRESE |
| v. | ) | |
| | ) | **OMNIBUS REPLY FURTHER IN** |
| | ) | **SUPPORT OF DEFENDANTS PAUL** |
| PAUL SPIVAK, et al. | ) | **SPIVAK AND OLGA SMIRNOVA'S** |
| | ) | **MOTIONS TO DISMISS THE SECOND** |
| | ) | **SUPERSEDING INDICTMENT** |
| | ) | |

Paul Spivak and Olga Smirnova (the "Defendants"), by and through undersigned counsel, hereby submit this Omnibus Reply in Further Support of Defendants' motions to dismiss. *See* ECF 283-285.

Dated: April 5, 2024

Respectfully submitted,

/s/  *David L. Axelrod*
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren W. Engelmyer (Admitted *Pro Hac Vice*)
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone:     215.864.8639
Facsimile:      215.864.8999
Email:           axelrodd@ballardspahr.com
                    engelmyerl@ballardspahr.com

*Attorneys for Defendant Paul Spivak*

/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:     216.696.3486
Facsimile:      216.592.5009
Email:           john.mccaffrey@tuckerellis.com
                     anthony.petruzzi@tuckerellis.com
                     melissa.kelly@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

## I.     INTRODUCTION

Defendants Paul Spivak and Olga Smirnova ("Defendants") filed three legally-sound and compelling motions to dismiss that collectively demonstrated that the Court should dismiss most of the Second Superseding Indictment (referred to as "SSI" and "Indictment"). *See* ECF 284 ("Count One Mem.") (motion to dismiss Count One and related substantive counts); ECF 283 ("Count Two Mem.") (motion to dismiss Count Two and related substantive counts); and ECF 285 ("Count 48 Mem.") (motion to dismiss Counts 48 and 50). The Government's opposition to Defendants' pretrial motions, ECF 303, 305 ("Opp.") makes one overarching point: the bar for a criminal indictment is so low that it does not matter what the SSI says, or whether the allegations actually sufficiently make out a crime, as long as it parrots the statutory language.

Rather than respond to Defendants' motions with well-reasoned argument based on applicable precedent, the Government repeatedly misstates the law and misstates Defendants' arguments. This failure to engage with Defendants' arguments is telling. It is a concession that the overwhelming majority of counts in the SSI, including the two conspiracy counts that form its backbone, are fatally deficient and must be dismissed.

## II.    COUNT ONE SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM FOR CONSPIRACY TO COMMIT SECURITIES FRAUD

### A.     The Government Misstates the Law and Defendants' Arguments

If Defendants Spivak and Smirnova actually engaged in a conspiracy to commit securities fraud, it would not be difficult to present to the grand jury a sufficiently logical indictment that explains what they did and how they did it. But because Defendants engaged in no criminal conduct, the Government drafted a conspiracy count that uses a lot of words and concepts that are often found in cases alleging securities fraud but are thrown together *here* in an illogical jumble

that fails to pass legal muster. The Government knows this, so rather than engage with what Count One actually says, the Government attempts to distract with two failing arguments.

First, the Government misstates the standard for a legally-sufficient indictment. Relying on *Hamling v. United States* and *United States v. Howard*, the Government contends that if it just repeats the "verbiage and elements" of the conspiracy statute and Rule 10b-5, that is alone sufficient. Opp. at 3. Not so. Looking to the cases the Government cites, in *Hamling*, the Supreme Court clearly stated:

> [T]he language of the statute may be used in the general description of an offence, **but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence**, coming under the general description, with which he is charged.

418 U.S. 87, 117-18 (1974) (emphasis added). Similarly, the court stated in *Howard* that "the indictment must: (1) set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) **be sufficiently specific** to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts." 947 F.3d 936, 942 (2020) (emphasis added) (cleaned up).

Second, rather than show why the SSI meets this standard, the Government sets up a strawman. It claims that Defendants argue that Count One is "vague[] and duplicit[ous]" and to defeat that chosen argument, cites a handful of cases[1] rejecting claims of duplicitous indictments. Opp. at 4. The Government argues that "[t]he existence of multiple theories of liability or the government's presentation of numerous factual scenarios to prove a single count does not render that count vague or duplicitous." *Id.*

---

[1] The cases the Government cites, *see* Opp. at 4, are entirely irrelevant because they address whether an indictment is duplicitous, meaning that "it joins in a single count two or more distinct and separate offenses." *See, e.g.*, *United States v. Campbell*, 279 F.3d 392, 398 (6th Cir. 1998) (quoting *United States v. Shumpert Hood*, 210 F.3d 660, 662 (6th Cir. 2000)).

But the Government gets it totally wrong. Defendants do not, and have not, argued that Count One is duplicitous; they argue that it fails to state a claim. The problem is not that the SSI fails to allege a "*specific*[]" theory of fraud (Opp. at 4), but that it fails to allege *any legally sufficient* theory of a conspiracy to commit securities fraud involving Spivak and Smirnova.

### B.      Count One Fails to Allege a Conspiracy to Commit Securities Fraud

It is black letter law that a conspiracy must charge a conspiracy to commit an offense against the United States. 18 U.S.C. § 371. If the charged conspiracy insufficiently alleges a conspiracy to commit an offense, there can be no charged conspiracy. *See Pettibone v. United States*, 148 U.S. 197, 209 (1893) (reversing a conviction for conspiracy to obstruct justice under a federal statute in part because "[t]he unlawful act which the defendants are charged with conspiring to commit was not an offence against the United States"); *United States v. Miller*, 767 F.3d 585, 602 (6th Cir. 2014) ("A conspiracy exists where the defendant knowingly and intentionally agreed to violate the law[.]"). "The essence of conspiracy is an agreement to commit an unlawful act." *Miller*, 767 F.3d at 599. Count One fails because it insufficiently alleges what "unlawful act" Defendants conspired to commit. Count One Mem. at 7, 10-11.

As Defendants showed, Count One is insufficient to state a claim for at least two reasons.[2] First, because it is a hodgepodge of securities fraud buzz words, without any coherent and logical theory of securities fraud, it fails to provide specific notice, and accordingly it does not enable Defendants to plead double jeopardy as necessary. Defendants do not assert that an indictment must provide "minute detail," (Opp. at 4), but rather that it must set out a specific legally-cognizable theory as to the particular unlawful acts Defendants allegedly conspired to commit.

---

[2] The Government also claims Defendants are "[c]halleng[ing] [t]he [e]vidence." Opp. at 6. Defendants did not raise a single evidentiary challenge, the Government does not cite such a challenge, and Defendants specifically stated that they were not raising evidentiary challenges. Count One Mem. at 4 n.4.

For example, Count One lists a number of transactions that purport to be investments in USLG. *See* SSI ¶ 41. But because of Count One's lack of clarity, it is impossible to determine whether the Government contends that those transactions were fraudulent because: (1) of a pump and dump scheme, *see* SSI ¶¶ 9, 23; (2) the investors were lied to about their investment by the people who sold them the stock (Mallion, etc.), *see* SSI ¶ 29; or (3) of an entirely different fraud scheme. Again, the Government likely conducted an investigation and knows the events that led "Victim-1," for instance, to invest $25,000 in USLG on July 19, 2016. SSI ¶ 41(c). But for reasons unknown, Count One fails to sufficiently state what it is that the grand jury actually alleges occurred that was a violation of federal criminal law.

*Howard* is inapposite and actually demonstrates why Count One is deficient. Opp. at 3. The indictment there charged the defendant with knowingly and willfully transmitting in interstate commerce a threat to murder an individual, and "specifie[d] the victim of the offense ('E.H'—Eric Holder), the means of interstate communication (a 'voicemail'), and the location in which defendant committed the crime (the 'Northern District of Ohio, Eastern Division')." *Howard*, 947 F.3d at 943. The court held that "[t]hese allegations were sufficiently specific so as to provide [the defendant] protection against double jeopardy." *Id.* (internal quotation marks omitted).

This is not an interstate threats case or a drug case where it is sufficient to allege that on April 5, 2024, defendant John Doe possessed illegal drugs with intent to distribute. A criminal defendant would understand that charge and be able to defend it based solely on the date and the criminal allegation. This case is dissimilar from that simple example in two ways: (1) the securities fraud statute provides for three ways the law can be violated; and, more importantly, (2) the indictment uses a word salad of concepts that sound in securities fraud, yet it fails to articulate a

sufficient theory that would put Spivak and Smirnova on notice of what the crime is, and/or is capable of ensuring that Spivak and Smirnova are not charged with the same crime again.

Indeed, given Count One's deficiencies it is entirely possible that (1) at trial the Government could allege that Victim-1 was defrauded because of misstatements made by Jason Arthur, SSI ¶ 41(e), and then (2) following an acquittal, the Government could indict again and allege that Victim-1 invested in USLG pursuant to an illegal pump and dump scheme. It is completely unclear, and for this reason alone, Count One fails to "enable[] the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution." Opp. at 3 (citing *Hamling*, 418 U.S. at 117).

Second, there is an equally important problem with Count One. It fails to sufficiently allege any one of the three ways that the securities statute can be violated (pump-and-dump, market manipulation, or misstatement).

**Pump-and-Dump Scheme:** If the Government is pursuing a pump and dump theory of securities fraud, Count One does not allege sufficient facts against Spivak or Smirnova. The Government mistakenly defends the failure to "allege any specific act by Spivak and Smirnova to allege their involvement in a pump-and-dump scheme." (Opp. at 5). But the real problem is that the Government does not allege that Defendants agreed to commit, or even knew about, a pump and dump scheme. *See* Count One Mem. at 9-10.

**Misstatement Scheme:** If the Government is pursuing a false statement theory of securities fraud, Count One does not allege sufficient facts against Spivak and Smirnova. It fails to allege anywhere that the Defendants knew that Mallion and others were going to make, or made, misrepresentations to investors. SSI ¶ 29.

5

To prove securities fraud, the Government must allege and prove that defendant "knowingly ma[de] a material misrepresentation or knowingly omit[ted] a material fact" with "the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998). The Government argues that "[i]t is enough to have alleged that Spivak, Smirnova, and Bongiorno conspired to [commit] securities fraud and that at least one of the conspirators committed one of the listed overt acts to accomplish an object of that conspiracy." Opp. at 5.[3] It may be true, as a matter of law, that one can be guilty of conspiracy without knowing all of the acts committed by the conspirators. But if the alleged securities fraud is making material misstatements to investors, you cannot be in a conspiracy to commit this crime if you did not know about those key actions. *See* Count One Mem. at 12 ("Those having no knowledge of the conspiracy are not conspirators[.]" (citing *United States v. Falcone*, 311 U.S. 205, 210 (1940))).

If the grand jury's investigation showed that Spivak and Smirnova knew that Mallion and others were making false statements to investors and agreed and encouraged the co-conspirators to make such statements, a sufficient indictment would write itself. The fact that *this* Indictment does not allege such a simple statement demonstrates that it is insufficient as a matter of law and

---

[3] The Government's reliance on *Frohwerk v. United States*, 249 U.S. 204, 209 (1919), is misplaced. *See* Opp. at 5. In that case, defendant argued that the indictment "d[id] not allege the means by which the conspiracy was to be carried out[,]" and that "there [was] no sufficient allegation of intent[.]" *Frohwerk*, 249 U.S. at 209. The Court held that "[i]t is enough if the parties agreed to set to work for [a] common purpose[,]" and "intent to accomplish an object cannot be alleged more clearly than by stating that parties conspired to accomplish it." *Id.* Defendants here are arguing neither about the "means by which the conspiracy was to be carried out," nor intent. The problem is that, unlike in *Frohwerk*, Count One does not allege sufficient facts to establish that there was a "common purpose" to do anything illegal or what that "common purpose" was.

strongly suggests that there is some factual deficiency that prevented the Government from alleging such a cognizable offense.

**Other Market Manipulation Scheme:** Count One fails to allege a market manipulation theory of fraud because it does not allege that Spivak and/or Smirnova: (1) engaged in manipulative trading; (2) agreed with anyone else that Mallion, Church or others should engage in manipulative trading; or (3) even *knew* Mallion, Church, or others were engaged in manipulative trading. Count One Mem. at 10-11.

**Paying Brokers Undisclosed Commissions:** Finally, to the extent that in Count One (and the substantive securities and wire fraud counts) the Government is alleging a conspiracy to commit securities fraud based on the payment of brokers' commissions or the failure to disclose such commissions, those are not illegal acts. *Id.* at 13-16. Indeed, the Government concedes it is not pursuing that theory. Opp. at 7 ("Even if [paying undisclosed commissions or kickbacks to brokers] were a legal act, no matter the facts alleged, that is not the crime they are charged with in the conspiracy counts.").[4]

### C. Dismissing Count One and the Related Substantive Counts Is in Accord with a Recent Decision in a Similar Case

Just two weeks ago, Judge Hanen in the Southern District of Texas dismissed a pump and dump securities fraud indictment for failing to state an offense. *United States v. Constantinescu*, No. 4:22-CR-00612, 2024 U.S. Dist. LEXIS 49916, at *3 (S.D. Tex. Mar. 20, 2024). In that case, the Government alleged that defendants purchased shares of a listed security, and posted messages

---

[4] Given the Government's statement that the alleged securities fraud was not the undisclosed brokers' commissions, Defendants will not respond to the Government's arguments on this point. *See* Opp. at 7-9. Defendants note, however, that Spivak's testimony in a lawsuit Spivak filed years before he was indicted only reinforces that Spivak was not willing to engage in conduct that he believed was illegal. Furthermore, it beggars belief that if Spivak was engaging in securities fraud he would very publicly sue one of his co-conspirators.

on social media platforms with false, positive information about the security to induce other investors to buy the security and artificially drive up its price. *Id.* at \*8. As an initial matter, that court focused on the sufficiency of the factual allegations and rejected the Government's oft-cited refrain that all it needs to do is cite the statutory language: "In an indictment upon a statute, it is not sufficient to set forth the [offense] in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the [offense] intended to be punished." *Id.* at \*3 (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)).

The court found that for purposes of alleging securities and wire fraud, "'intent to defraud' requires **both** 1) an intent to deceive and (2) an intent to cause some harm to result from the deceit," and a "'scheme to defraud' requires depriving another of money or property and bringing about some financial gain to the defendant." *Id*. at \*9-11 (emphasis in original). Judge Hanen concluded that "the indictment fatally [did] not allege that any Defendant intended to or actually deprived *any* individual investor of *any* money or property." *Id*. at \*17 (emphasis in original). According to Judge Hanen: the indictment "adequately allege[d] that obtaining financial gain was an object of the [d]efendants' scheme to defraud; obtaining financial gain, however, is only half of the equation. It is the other half of the equation—harming a victim's traditional property right—that is lacking." *Id.* at \*14.

Likewise, here, there is simply no allegation that Spivak and/or Smirnova intended to deceive, and to cause harm to someone as a result of that deceit. At most, Count One alleges that Mallion and others caused victims to wire money based on fraudulent statements, but there is no allegation that Spivak or Smirnova agreed with Mallion and the other co-conspirators to intentionally deprive any investor of money or property.

8

## III.     COUNT TWO SHOULD BE DISMISSED

### A.     Count Two Should Be Dismissed Because the Government Entrapped Spivak and Smirnova

In response to Defendants' showing that the Government sought to entrap Spivak and Smirnova to create a crime, the Government completely ignores the law and the facts. It claims that "whether the conduct charged as part of Count One [sic] can be proven beyond a reasonable doubt is a dispute for the jury to decide after a trial." Opp. at 9. But it ignores clear precedent that "entrapment may be established as a matter of law if the undisputed evidence demonstrates that the government agent engaged in conduct which 'overbears an otherwise innocent person's will and thereby induces him to commit a criminal act that he was not disposed to commit.'" Count 2 Mem. at 11 (citing *United States v. Jones*, 575 F.2d 81, 84 (6th Cir. 1978)).

The Government ignores the facts because it is undisputed that:

1) In 2019-2021, the SEC charged a number of individuals with violations of the securities laws and informed Spivak that it was declining to bring an enforcement action against him or USLG. Count One Mem. at 5.

2) As of November 12, 2020, when the sting began, the Government had no evidence that Spivak was engaged in any illegal activity; Count Two Mem. at 13.



4) In February 2021, after more than fifteen conversations, meetings, and phone calls, the Government's agents lured Spivak, Smirnova, and their infant daughter to travel to Florida so that Spivak could meet an alleged significant potential investor. *Id.* at 4-5. The Government's agents lured Spivak to meet with this big investor, not to discuss some other type of securities transaction. *Id.*





The Government does not dispute any of this, and instead argues only that "Paul Spivak and Olga Smirnova were predisposed to commit the crimes charged" and conclusorily states that "[e]vidence of their predisposition to commit securities and wire fraud exists in the exhibits" that Defendants filed. Opp. at 9-10. But the only two pieces of evidence that the Government cites actually undermine its claim and illustrate Spivak's predisposition *to follow* the law.

First, the Government references a January 2021 meeting where agents urged Spivak to sell USLG shares.███████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████The Government implies that somehow this demonstrated Spivak's criminal disposition because the shareholders were Forrest Church and Charles Scott. Opp. at 10. This makes little sense. ████████████████████████████████████████████████

██████████████████████████████████████████████ shows Spivak's propensity to follow the law, not break it. It also undermines any argument that Spivak was trying to "dump" the stock. In fifty-six pages, the SSI never alleges that Spivak sold any of his USLG stock, or that he personally profited from any sale of USLG securities. *See* Count Two Mot. at 14. Nor could it—Spivak has sold very little of the millions of shares in USLG stock that he holds.[5]

---

[5] Defendants have not made any purely factual arguments about their innocence and complete lack of fraudulent intent. But if they had, they would have pointed out that the SSI omits any discussion of the fact that none of the investor funds went to Defendants; during the alleged conspiracy, Spivak was forgoing drawing a salary from the company; and since the inception of USLG, Defendants have poured money into the company to keep it afloat.

10

The Government also claims that Spivak said Church and Scott were holding on to ███ three

million shares for Spivak/USLG." Opp. at 10. However, the transcript is clear that Spivak first said

that Church and Scott were ███████████████ and then corrected that to ██████

███████████



This is another example of Spivak's

lack of disposition to break the law, rather than a nascent interest in doing so.

The Government's silence in the face of this overwhelming evidence leaves no question

that the Government sought to entrap Spivak and Smirnova to commit a crime that they were not

predisposed to commit.

### B. Count Two Misrepresents the Facts and Suggests that There Was an Error in the Grand Jury Proceedings

It is undisputed that Count Two alleges a set of facts that is at best misleadingly incomplete.

Count Two is written as if in February 2021, Spivak sought out new co-conspirators to engage in

securities fraud. For this reason it is likely that the Grand Jury was misled on both the facts and

the law, and that these irregularities substantially influenced the Grand Jury's deliberations.

As with its response to Count One, the Government chooses to deflect and distract, rather

than to engage with Defendants' meritorious arguments. First, the Government argues that "an

otherwise valid indictment cannot be dismissed by a district court even if the Government failed

to disclose to the Grand Jury 'substantial exculpatory evidence' in its possession." Opp. at 11. This

is another strawman. Defendants contend that the Government misled the Grand Jury because

Count Two includes several false allegations and varies drastically from what is reflected in

numerous telephone calls and meetings, not that it failed to disclose "substantial exculpatory evidence." *Id.*

As Defendants argued, dismissal on this basis is appropriate if the errors "substantially influenced the grand jury's decision to indict, or . . . there is grave doubt that the decision to indict was free from the substantial influence of such violations." Count Two Mem. at 7 (citing *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (cleaned up); followed by *United States v. Matsa*, 540 Fed. App'x 520, 525 (6th Cir. 2013)).

Second, the Government claims that it is "pure speculation" that "the Government likely provided flawed legal instruction regarding whether the non-disclosure of commission payments and kickbacks were legal or illegal conduct." Opp. at 11. The Government again fails to respond to the argument Defendants actually made. Defendants' argument has nothing to do with the brokers' commission payments that are discussed in Defendants' other motion. It is instead the Government's failure to present the overwhelming facts of an entrapment claim and to instruct on the law of entrapment that amounted to an "impairment of the grand jury's independent role." *See* Count Two Mem. at 9 (citing *United States v. Vetere*, 663 F. Supp. 381, 386 (S.D.N.Y. 1987) (dismissing the indictment because of the combination of hearsay testimony, which contained factual errors about the offense and about the defendant's background, and potentially erroneous and misleading jury instructions on the law)).

The cases the Government relies on are inapposite and irrelevant. *See* Opp. at 11. *United States v. Woods*, *United States v. Rugiero*, and *United States v. Breitkruetz* each involved claims that the Government improperly used the Grand Jury to prepare for trial. The court in *Woods* found that defendants offered "nothing beyond their own unproved suspicions to prove that [witnesses] were improperly summoned before the grand jury for the sole or dominant purpose of preparing

the pending indictments for trial." 544 F.2d 242, 250 (6th Cir. 1976). Similarly, the court in *Rugiero* found that defendant did not demonstrate that the witness was called for "the sole or dominant purpose" of discovering facts relating to defendant's pending indictment." 20 F.3d 1387, 1395 (6th Cir. 1994). Finally, the court in *Breitkreutz* concluded that "Defendant's assertions of personal opinion as to the contents of the grand jury testimony and the purposes for which [witnesses] were called to testify fail to meet his burden of proving irregularity in the grand jury process." 977 F.2d 214, 217 (6th Cir. 1997).

Here, by contrast, Defendants offer more than "unproved suspicions" or "personal opinion." Defendants demonstrated that Count Two, as drafted, is factually incorrect and misrepresents what actually occurred. This is not based on suspicion, but rather extensive, undisputed evidence, in the form of hundreds of hours of recorded calls and meetings that the Government produced.[6] It is entirely unclear what, if any, actual evidence from recorded calls and meetings was ever presented to the grand jury. This is more than enough to conclude that there were likely irregularities in the Grand Jury process that permitted the Grand Jury to decide to return an indictment.[7]

*United States v. Talbot*, *see* Opp. at 11-12, is also distinguishable. There, defendant was charged with assault with intent to commit a felony on a military reservation and was prosecuted

---

[6] The Government also cites *United States v. Azad*, in which the defendant claimed the indictment included "rendering unsworn testimony, offering personal opinions concerning witnesses' credibility, and speculating in an inflammatory manner." 809 F.2d 291, 294 (6th Cir. 1986). The court found that those vague assertions did not demonstrate "any irregularity" in the Grand Jury proceedings, *id.* at 295, unlike Defendants' showing here that the Grand Jury was misled because the Government failed to present the facts.

[7] It may be that Defendants' well-reasoned conclusions about irregularities in the Grand Jury process are incorrect. If that is the case, it will be easy enough for the Government to produce a transcript showing that the Government, or a Government witness, informed the Grand Jury about the sting and the facts that led up to what is written in Count Two.

by the military before the proceedings were moved to federal court. 825 F.2d 991, 995-96 (6th Cir. 1987). The court found that there was no error in the Grand Jury proceedings because the defendant did not allege any misconduct in prosecuting the matter, and "the defendant failed to articulate any substantial actual prejudice to or impairment of his defense against the indictment as a result of the procedural course of the action[.]" *Id.* at 100.

Here, the "the prejudice to or impairment of [Defendants'] defense" warranting dismissal is evident. Because of the way Count Two is drafted, i.e., as if this was not a Government sting, it is likely that the grand jury did not receive correct legal instructions on the law of entrapment. *See Jacobson v. United States*, 503 U.S. 540, 548-49 (1992) ("In their zeal to enforce the law, however, Government agents may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute."); *accord United States v. Ng*, 26 F. App'x 452, 459 (6th Cir. 2001).

Alternatively, Defendants request disclosure of the Grand Jury transcripts related to the evidence and instructions the Government presented regarding Count Two. Under Fed. R. Crim. P. 6(e)(3)(E)(ii), where a defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," courts may disclose details of a Grand Jury proceeding. Count Two Mem. at 10 n.4. Defendants have demonstrated "that the transcripts are needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that the request is structured to cover only the material so needed." *Id.* (citing *United States v. Arrick*, No. 18-3479, 2018 U.S. App. LEXIS 33444, at *2 (6th Cir. Nov. 28, 2018) (cleaned up)).

### C.    Count Two Should be Dismissed Because It Fails to State a Claim

Count Two should also be dismissed for the independent reason that it fails to state a claim against Spivak and Smirnova for conspiracy to commit securities fraud. Count Two Mem. at 15-

14

18. As with Count One, Count Two spends pages discussing words and phrases that are frequently found in securities fraud indictments, but it never cogently says what illegal act Defendants conspired to do. *See* Count Two Mem. at 16-18. The Government does not even attempt to respond to this argument, likely because even post-indictment the Government has not found a theory of securities fraud that is supported by admissible evidence.

## IV. THE SUBSTANTIVE SECURITIES AND WIRE FRAUD COUNTS ASSOCIATED WITH COUNTS ONE AND TWO SHOULD BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM

The Government argues that "[t]he substantive securities and wire fraud counts similarly track the statutory language of their respective statutes and rules" and thus are sufficient. Opp. at 5. Again, more is required. As the Government acknowledges, "[a]n indictment need not [specifically] state each factor of a charge that must be proven, ***as long as the facts alleged, taken together, support the elements of the charge*.**" *Id.* at 6 (quoting *United States v. Lee*, 919 F.3d 340, 354 (6th Cir. 2019)). The SSI is plainly insufficient because it does not even allege what the fraud is.[8] For example, if the basis for securities fraud is misstatements, the SSI does not allege that Spivak or Smirnova directly or indirectly contributed to any false statements.

The Government is also wrong that if Spivak were acquitted of the securities and wire fraud counts, "there is enough information alleged" such that he would not be charged with these counts again. Opp. at 6. Following the Government's example with Count Five, *see id.*, if the Government argued at trial that the sale of 20,000 shares of USLG on October 14, 2016 was the product of fraudulent misstatements, and Spivak was acquitted for this charge, it is possible that the

---

[8] For this reason, *United States v. Lee*, 919 F.3d 340 (6th Cir. 2019) is distinct. There, a city council woman was charged with committing honest services fraud. *Lee*, 919 F.3d at 342. The indictment was clear – it alleged "that [the defendant] took official action to benefit [a friend] by helping him achieve favorable outcomes in judicial and administrative proceedings[.]" *Id.* at 354 (cleaned up). Here, by contrast, the SSI does not contain sufficient facts to notify Spivak of the charges against him or to infer the elements of the charge.

15

Government could come back and charge him again with selling those 20,000 shares of USLG on October 14, 2016 under a market manipulation theory.

This is precisely what distinguishes this case from *United States v. Stone*, 762 F. App'x 315, 321 (6th Cir. 2019), which involved neither securities nor wire fraud. Opp. at 6. There, in a footnote, the court notes that if it were to consider the merits (defendant actually waived the argument), it would find the indictment charging defendant with possession of drugs with the intent to distribute sufficient because it "tracks the statutory language of the offenses charged and provides enough specificity so that the defendant is protected against double jeopardy." *Stone*, 762 F. App'x at 321 n.2. Unlike the defendant in *Stone*, who could easily understand a drug charge and how to defend it, *see id.* at 324 ("There is no evidence that Stone did not understand the proceedings[.]"), Spivak has no idea what fraud he is charged with, and is therefore vulnerable to double jeopardy.

Again, examples help illustrate the peril of this insufficient Indictment. Paragraph 41 describes numerous overt acts, including some where an alleged co-conspirator "caused" an investor to invest in USLG, as described here:

> ff.   On or about October 13, 2016, Arthur and BONGIORNO caused Victim-5 to send a check for $5,000 to USLG account x5187 at Huntington Bank for the purchase of USLG shares.

SSI ¶ 41(ff). The SSI does not say what Arthur or Bongiorno did to "cause" Victim-5 to send the check and omits any discussion of what Spivak did. Nonetheless, Count 29 seemingly charges this same transaction as a substantive wire fraud count:

| 29 | October 13, 2016 | $5,000 | US Bank | Huntington Bank | SPIVAK BONGIORNO |

SSI ¶ 51. But besides repeating the statutory wire fraud language, Count 29 omits any discussion of what Spivak did to commit wire fraud. Indeed, given the paucity of details, it is difficult to understand how the Grand Jury returned a true bill.

While some of the substantive securities fraud and wire fraud counts correlate to overt acts in Count One or Two, there are others that do not. *See, e.g.*, Securities Fraud Counts 6-10, 18, 19; Wire Fraud Counts 23, 26-28, 35, and 40-42. These counts are even more deficient. There are no details that would permit Spivak to determine what factual allegations underlie these charges or to assert double jeopardy, if necessary.

### A. The Government Misstates the Law of Wire Fraud

In response to Defendants' showing that the wire fraud counts are defective, the Government misstates the law. It claims that a "wire fraud charge is not defective because the indictment does not allege that a particular defendant knew the specific lie an investor was told or truth withheld to separate them from their money." Opp. at 9. The Government provides no citation for this proposition, and that is because it is a blatant misstatement of the law. A wire fraud conviction requires showing that the defendant "knowingly made several material misrepresentations, which is to say that he made several assertions he knew were false and that would have affected a reasonable person's actions in the situation." *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003).

### B. Venue is Improper for Counts Forty-Four and Forty-Five

Further, Defendants showed that venue is improper under 18 U.S.C. § 3237(a) for Counts Forty-Four and Forty-Five because the wires were neither sent from, nor ultimately received in,

an account in the Northern District of Ohio. *See* Count Two Mem. at 21-22. The Government's statement that "[s]imply put, the indictment alleges the subject wire communications or transfer of funds took place in the Northern District of Ohio and elsewhere," Opp. at 10, is not a response.

## V.    COUNTS FORTY-EIGHT AND FIFTY SHOULD BE DISMISSED

Defendants showed that Count Forty-Eight, charging Spivak with conspiracy to obstruct justice, should be dismissed because the SSI alleges no evidence that Spivak conspired to, or intended to, threaten, intimidate, harass or corrupt anyone. Count 48 Mem. at 5. Defendants also demonstrated that Count Fifty, which charges Spivak with destroying three computers to obstruct an investigation, must be dismissed because there was no pending investigation at the time for Spivak to impede. *Id.* at 9-10.  The Government fails to even respond to this motion. "The Sixth Circuit has further held that when a party fails to respond to a motion or argument therein, the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion." *Hill v. Jones*, No. 5:18-cv-511-JMH, 2019 U.S. Dist. LEXIS 158300, at *6 (E.D. Ky. Sept. 17, 2019) (citing *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008)); *see also Scott v. Tenn.*, 878 F.2d 382, 1989 U.S. App. LEXIS 9653, at *4 (6th Cir. 1989) ("[I]f a plaintiff fails to respond or otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."). For this reason alone, the Court should dismiss Counts 48 and 50 with prejudice.

## VI.    CONCLUSION

For the foregoing reasons, Defendants Spivak and Smirnova respectfully request that Counts One and Two of the SSI, the associated securities and wire fraud counts (Counts Five through Twelve, Eighteen through Nineteen, Twenty, Twenty-Two, Twenty-Four through Forty-Two, and Forty-Four through Forty-Seven), and Counts Forty-Eight and Fifty be dismissed with prejudice.

Respectfully submitted,

/s/ *David L. Axelrod*
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren W. Engelmyer (Admitted *Pro Hac Vice*)
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone:215.864.8639
Facsimile:215.864.8999
Email:axelrodd@ballardspahr.com
        engelmyerl@ballardspahr.com
Attorneys for Defendant Paul Spivak

/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)
Tucker Ellis LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:216.696.3486
Facsimile:216.592.5009
Email:john.mccaffrey@tuckerellis.com
        anthony.petruzzi@tuckerellis.com
        melissa.kelly@tuckerellis.com
Attorneys for Defendant Olga Smirnova

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

<u>/s/  *David L. Axelrod*</u>
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren W. Engelmyer (Admitted *Pro Hac Vice*)
Attorneys for Defendant Paul Spivak