IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-491 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO SPIVAK'S MOTION |
| PAUL SPIVAK, | ) | FOR JUDGMENT OF ACQUITTAL OR |
| | ) | NEW TRIAL |
| Defendant. | ) | |

The United States of America, by and through undersigned counsel, hereby submits this Response in Opposition to Paul Spivak's Motion for Judgment of Acquittal or, in the Alternative, Motion for a New Trial (R. 480). Because none of Spivak's claims have merit, this Court should deny his motion.

## I. INTRODUCTION

A jury of Paul Spivak's peers carefully consider the evidence offered in his trial over more than three weeks. The government presented the jury with testimony from seven of Spivak's co-conspirators, fifteen victim-investors, an expert witness, a forensic accountant, and an FBI special agent. It also submitted approximately 345 exhibits for the jury's review. After the government's case-in-chief, Spivak moved for a judgment of acquittal under Rule 29, and the Court found that the evidence was sufficient for the jury to convict Spivak on each of the charges against him. Spivak then called three fact witnesses and an expert witness and submitted about three dozen exhibits. After deliberating for nearly three full days, the jury unanimously found Spivak guilty of conspiracy to commit securities fraud (Count 1) and two counts of wire fraud (Counts 27 and 28) and not guilty of ten counts of securities fraud and nineteen counts of wire fraud. He then pled guilty to charges not at issue in this motion.

Spivak now seeks to set aside the jury's guilty verdicts, asking the Court to enter a judgment of acquittal under Federal Rule of Criminal Procedure 29 or, in the alternative, order a new trial under Federal Rule of Criminal Procedure 33. Citing out-of-Circuit cases, Spivak asks the Court to compare the verdicts against each other and come to make inferences from the jury's verdict in his favor. But that is the opposite of what is required. The Court has already considered whether the evidence was sufficient to permit the jury to convict Spivak of *all* of the charges against him in Phase 1, and found that the evidence was sufficient. No evidence submitted after then casts any doubt on the Court's analysis for any of his counts of conviction. The jury had ample and wide-ranging bases for convicting him of this conspiracy. And Spivak's basis for throwing out the jury's wire fraud guilty verdicts is based on a misunderstanding or misstatement of the basic thrust of the fraud—recharacterizing the evidence to suit a snippet of case law, and reimagining the fraud as seeking to obtain information rather than investor money. That was not the theory or the evidence that the government presented. Because Spivak cannot show he is entitled to the relief he seeks, this Court should deny his motion.

## II. ARGUMENT

### A. SPIVAK MUST CLEAR A HIGH BAR TO SUCCEED.

Spivak moves the Court for a judgment of acquittal under Rule 29 or, in the alternative, for a new trial under Rule 33. He faces an uphill battle to succeed on either claim.

Under Rule 29(a), a judgment of acquittal can only be entered for an offense for which there was insufficient evidence to sustain a conviction. Such a motion can be granted only "where the prosecution's failure is clear." *Burks v. United States*, 437 U.S. 1, 17 (1978). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Hamm*, 952 F.3d 728, 736 (6th Cir. 2020) (quoting *Jackson v. Virginia*,

443 U.S. 307, 319 (1979)); *see also United States v. Paulus*, 894 F.3d 267, 275 (6th Cir. 2018). A reviewing court must draw all reasonable inferences in favor of the jury's verdict, *United States v. Bowens*, 938 F.3d 790, 794 (6th Cir. 2019), and examine the sufficiency of the evidence based on the entire record. *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984). The court may not weigh conflicting evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Burks*, 437 U.S. at 16; *United States v. Abdullah,* 162 F.3d 897, 902 (6th Cir. 1998).

Rule 33, on the other hand, outlines the process by which a defendant may receive a new trial. Within fourteen days after the jury's verdict, a defendant can move the district court to vacate the judgment and grant him a new trial. Fed. R. Crim. P. 33(a), (b)(2). But the district court may grant the motion only if "the interest of justice so requires." Fed. R. Crim. P. 33(a).

Under Rule 33, the Court begins its analysis by presuming the jury verdict is valid. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (citations and quotations omitted); *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988). But the Court has more discretion in considering a Rule 33 motion. *See United States v. Wettstain*, 618 F.3d 577, 590 (6th Cir. 2010). Here, the court is permitted to "'consider the credibility of witnesses and the weight of the evidence' to ensure there ha[s] not been a miscarriage of justice." *Paulus*, 894 F.3d at 278 (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). When, as here, the motion is based on the manifest weight of the evidence, the defendant bears the burden to demonstrate an "extraordinary circumstance where the evidence preponderates heavily against the verdict." *Hughes*, 505 F.3d at 593 (citations and quotation marks omitted); *Ashworth*, 836 F.2d at 266.

Courts do not look favorably on motions for new trials, especially those based on the weight of the evidence. *United States v. Garner*, 529 F.2d 962, 969 (6th Cir. 1976); *United States v.*

3

*Martinez*, 763 F.2d 1297, 1313 (11th Cir. 1985).  They are "granted only with great caution." *Garner*, 529 F.2d at 969.

  B. <u>SPIVAK'S MOTION FALLS SHORT OF CLEARING THE HIGH BAR.</u>

    1. <u>The government presented sufficient evidence to prove Spivak guilty of conspiracy.</u>

Spivak asserts the government failed to carry its burden to prove him guilty of conspiracy to commit securities fraud.  That claim is belied by the record.

Seven of Spivak's co-conspirators testified, each identifying Spivak as leading the fraud scheme.  For example, Richard Mallion—who previously pled guilty to conspiring to commit securities fraud with Spivak—testified that Spivak asked him to help Spivak take USLG public via a reverse merger.  Mallion told the jury about how he and Spivak discussed needing to identify a shell company with which to merge; they sought out a shell company with a small float to make it easier for Spivak and others to control the stock price.  After USLG went public, with Spivak's blessing, Mallion brought in Thomas Collins—who also testified—to run illegal call rooms to sell USLG's shares on the open market and artificially inflate USLG's stock price and trading volume.

The jury also heard from Spivak's other convicted co-conspirators, unregistered stockbrokers whom Spivak dubbed "pirates," about Spivak's knowledge of their role in the scheme.  The pirates, including Hughe Duwayne Graham, Larry Matyas, and Christopher Bongiorno, testified that, as part of their arrangement with Spivak, they sold USLG's restricted stock. They told the jury about how Spivak paid them exorbitant commissions; typically, around forty or fifty percent of the investment they secured, and that they hid this information from investors.  Motivated by money, these pirates explained the deceptive tactics they used to secure investments.  For example, they used fake names, lied about the stock's holding period, and misleadingly talked up the company's relationship with Home Depot.  They all testified about how

4

Spivak knew about these practices. And they also admitted to submitting fraudulent invoices to Spivak to conceal their commissions at Spivak's request—or in some instances, to finding that invoices that Spivak had submitted to the SEC were not invoices they had actually submitted.

Similarly, Church testified that he had conspired with Spivak to manipulate the stock price of USLG and to deceive the investing public through his holding and trading of the stock. Although he had begun as an investor and would-be victim, he morphed into a co-conspirator, helping to prop up the price of USLG by making regular purchases to inflate the price. Further, in connection with the resolution of USLG's lawsuit against Mallion and others, he had agreed to hide Spivak's machinations both to control free-trading stock held in his name and Scott's, and to continue to pay Mallion for fraudulently promoting the stock on the market. Because Mallion had proved too expensive and unreliable, he testified that he, Spivak, and Scott had looked into creating their own call-room operation, but elected to continue working with Mallion and other unsavory characters out of a fear of ending up in prison.

But the jury did not have to take the co-conspirators at their word. The government submitted documentary evidence corroborating their testimony. For example, the government showed the jury hundreds of pages of text messages between Spivak, Laura Loesch, and others where they discussed, among other things, the incoming payments from victim-investors and the outcoming commissions to the respective pirates. And the government showed the jury dozens of fraudulent invoices the pirates submitted to Spivak to paper over their undisclosed commissions, as well as emails in which Church had laid out plans for creating their own call room.

Spivak, in support of his case, separately submitted his own evidence to the jury; but none of it moved the needle. He called three fact witnesses who testified only about collateral issues. And his expert witness likewise spent most of his time on the stand discussing Spivak's personal

trading history, which was not at issue in the case. Indeed, to the extent Professor Rapp spoke to any issues in actual dispute, it was to undercut one of Spivak's central defenses—that Spivak had somehow contracted around criminal liability via a clause in investment agreements that referenced potential payment of "customary cash commissions" to "FINRA member firms and other qualified parties." (*See, e.g.*, Nolan Subscription Agreement, GX 220 at 14). Rapp testified that one "become[s] a qualified person by taking FINRA's exams" and "passing them," which none of the pirates had done. (R. 460: Sept. 5, 2024 Tr., PageID 5098).

Thus, based on the entire record, *see Stone*, 748 F.2d at 363, the government presented ample evidence to prove beyond a reasonable doubt that Spivak conspired to commit securities fraud, as the Court had found in denying Spivak's initial Rule 29 motion, after an extended discussion with the parties. (*See* R. 477: Sept. 4, 2024 Tr., PageID 8617-21; *Id.*, PageID 8581-8617).

Of course, the fraud was perpetrated on the investors, and the evidence of Spivak's direct contact with investors and with free-trading shares was more limited in scope. As all these witnesses testified, Spivak had them on the front lines, trying to keep his hands clean—as many leaders of criminal conspiracies do. The jury was free to find, and did find, that the government had not proved beyond a reasonable doubt that *Spivak himself* had personally committed most of the charged instances of securities fraud and wire fraud. But that did not preclude the jury from finding, as they did, that he conspired to commit securities fraud. Nor, for that matter, did it prevent them from finding, as they did, that he *had* personally participated in the wire frauds charged in Counts 27 and 28—in which, after exchanging numerous text messages with (and about) Mallion's pumping and selling free trading shares and making kickback payments to USLG, Spivak himself arranged to receive wire payments from Mallion.

6

2. <u>Spivak's arguments to the contrary, based primarily on purported conflicts between the acquittals and convictions, do not pass muster.</u>

Spivak does not point to any flaw in the Court's reasoning in denying his initial Rule 29 motion. Nor does he explain how any evidence he later presented undermined that ruling. Instead, Spivak claims that the jury's acquittal on the substantive charges somehow speaks to the validity of their guilty finding on the conspiracy charge. He spills much ink focusing on *some* of the evidence offered in support of certain counts—even counts to which co-defendants have pled guilty—and simply assumes that broad swaths of the conspiracy concerned categorically lawful activity. He insinuates that the jury's verdict is therefore inconsistent, arguing the acquittals undermine the weight of the evidence against him on the conspiracy for unspecified reasons. This is the core of Spivak's motion, and it is directly contrary to law under Rule 29, and a far cry from meeting the test for a new trial under Rule 33.

For starters, even assuming the jury's verdicts were inconsistent, "inconsistent verdicts in a criminal case generally are not reviewable." *United States v. Randolph*, 794 F.3d 602, 610-11 (6th Cir. 2015). That is because the jury's verdict could be the result of lenity, compromise, or mistake. *Dunn v. United States*, 284 U.S. 390, 394 (1932) (Holmes, J.); *United States v. Powell*, 469 U.S. 57, 66 (1984); *see also United States v. Ruiz*, 386 F. App'x 530, 533 (6th Cir. 2010). As a result, "verdicts cannot be upset by speculation or inquiry into such matters." *Dunn*, 284 U.S. at 394. That is true even "where the jury acquits a defendant of a predicate felony, but convicts on the compound felony"—that is, even where the count of conviction actually depends on the commission of the acquitted predicate crime. *Powell*, 469 U.S. at 67. Here, of course, that is not the case, as it is well established that a conspiracy can be committed without the object offense

7

being completed, and of course that one defendant might conspire to commit offenses that his co-conspirators have committed.[1]

The Sixth Circuit recognizes two exceptions to this general rule. The first is that the jury verdicts "are marked by such inconsistency as to indicate arbitrariness or irrationality" and the second is where a "guilty verdict on one count necessarily excludes a finding of guilty on another." *Randolph*, 794 F.3d at 610-11; *see also United States v. Turner*, No. 22-5046, 2024 WL 3634454, at *14 (6th Cir. Aug. 2, 2024). Spivak makes no attempt address those issues and so has forfeited any such argument. Even if he had made such an argument, it could not succeed.

The jury's verdicts were neither arbitrary nor irrational. Based on the documents and his co-conspirators' statements, the jury may have reasonably believed was not directly involved in the conduct charged in the substantive counts but, at the same time, understood that Spivak still ultimately conspired with these individuals, and did commit the substantive acts of which he was convicted. It was within the jury's province to draw this reasonable inference, and the Court should not usurp jury's role in that regard. *See United States v. Harrison*, 663 F. App'x 460, 465 (6th Cir. 2016).

And convicting Spivak of conspiracy but not securities fraud was likewise entirely proper. Both the Supreme Court and the Sixth Circuit have upheld verdicts convicting for conspiracy and acquitting of substantive charges, and even affirmed genuinely inconsistent verdicts where a defendant was acquitted of a predicate felony but convicted of a compound felony. *See Harrison*, 663 F. App'x at 464; *Powell*, 469 U.S. at 67-69; *see also Ruiz*, 386 F. App'x at 533. Contrary to

---

[1] The jury here was not presented with a *Pinkerton* theory of liability under which Spivak might have been convicted of a substantive offense without having committed or directly aided and abetted that offense.

the unspoken assumption that underlies Spivak's arguments, it is therefore possible for a jury to convict a defendant of conspiracy to commit fraud, yet acquit him of substantive counts of that fraud, even based on the same events or transactions. *See, e.g.*, *United States v. Bischoff*, Nos. 97-1980, 97-1983, 1999 WL 644340, at *1-2, *5 (6th Cir. Aug. 19, 1999) (finding that there was sufficient evidence to convict the defendant of conspiracy to commit wire fraud, even though she was acquitted of wire fraud). Other circuits have held likewise. *United States v. Rios-Ortiz*, 708 F.3d 310, 317 (1st Cir. 2013) (collecting cases on inconsistent verdicts, and finding no problem for the jury "to convict on the conspiracy charge, and acquit the same defendant on the substantive charge alleged to have been the object of the conspiracy"); *United States v. Gieger*, 190 F.3d 661, 664 (5th Cir. 1999) (rejecting challenge to conspiracy conviction based on acquittals of all substantive charges); *United States v. Vastine*, 363 F.2d 853, 854-55 (3d Cir. 1966) (collecting cases and upholding conversion conspiracy conviction and denial of new trial motion despite acquittals on substantive counts of conversion).

The Sixth Circuit has repeatedly rejected challenges like Spivak's, both in the fraud context, as in *Bischoff*, and in other contexts. For example, in *United States v. Conatser*, 514 F.3d 508 (6th Cir. 2008), the defendant corrections officer had been convicted of a conspiracy to deprive inmates of civil rights through assaults, but acquitted "of the only assaults in which he was specifically alleged to have participated." *Id.* at 519. The court rejected a motion for acquittal based on the alleged inconsistency, as such a claim, like Spivak's here, is inconsistent with the black letter law on inconsistent verdicts. *Id.* Courts "may not upset a verdict solely because the verdict is not reconcilable with other verdicts rendered for or against the defendant." *Id.* (quoting *United States v. Silva*, 846 F.2d 352, 357-58 (6th Cir. 1988). Nor would the acquittals be any obstacle to proving any required overt act, as "that burden is satisfied by proof that *at least one* of

9

the alleged overt acts was committed by *any one* of the coconspirators." *Id.* Even were there no proof that co-conspirators had committed substantive offenses, in *Conatser*, as here, a number of overt acts were alleged that were *not* substantive counts of acquittal, precluding any challenge on those grounds. *See id.* Here, moreover, Spivak *was* convicted of two such overt acts that were charged as substantive offenses.

Likely recognizing he cannot blatantly challenge the verdicts as inconsistent, Spivak instead masquerades his inconsistency argument as an insufficient evidence argument. But that fails, too.

Spivak, citing cases outside the Sixth Circuit, wants the Court to assume the jury rejected the government's theory of the case and therefore the evidence that went along with it. But that argument does not fly in this Circuit. "It cannot be said that [a defendant's] conspiracy conviction was erroneous and the jury showed its true colors only when it acquitted him on the [substantive charges]." *United States v. Shepherd*, 646 F. App'x 385, 391 (6th Cir. 2016). Defendants are "given the benefit of [an] acquittal on the counts on which [they are] acquitted, and it is neither irrational nor illogical to require [them] to accept the burden of conviction on the counts on which the jury convicted." *Shepherd*, 646 F. App'x at 391 (quoting *Powell*, 469 U.S. at 69).

District courts "do not compare jury verdicts against each other, coming to [their] own conclusions about what is logical[.]" *United States v. Johnson*, 837 F. App'x 373, 384 (6th Cir. 2020). Instead, courts perform an independent review of the sufficiency of the evidence for each conviction, without considering the jury's determination that evidence on other counts may have been insufficient. *Ruiz*, 386 F. App'x at 534; *Johnson*, 837 F. App'x at 384. "Each count in an indictment is regarded as if it [were] a separate indictment." *Johnson*, 837 F. App'x at 384 (quoting *Dunn*, 284 U.S. at 393 (1932)). A defendant, therefore, may not argue that a partial acquittal means

10

the jury "rejected the government's theory" in a way that undercuts a guilty verdict on other charges, as the Sixth Circuit recently reaffirmed. *See United States v. Rolling*, No. 23-1045, 2024 WL 4512532, at *8 (6th Cir. Oct. 17, 2024) (quoting *United States v. Lawrence*, 555 F.3d 254, 262 (6th Cir. 2009)); *accord United States v. Ashraf*, 628 F.3d 813, 823 (6th Cir. 2011) (same).

That is exactly what Spivak seeks to do here. He asks the Court to assume that the jury rejected the government's theory and evidence on certain counts, to therefore disregard that evidence, and then to determine there was insufficient evidence remaining to convict him. That is not a cognizable claim, and this Court should reject it.

Even were that not so, this is not a case where the jury acquitted Spivak on all substantive counts. He was found to have engaged in a wire fraud scheme connected to Mallion's payment of kickbacks to USLG. As Mallion himself explained, these were payments to USLG of Spivak's share of the proceeds of his sales of free-trading USLG stock on the open market through call room activity.

In sum, the Court has already explained why the government had presented sufficient evidence to convict him of all the charges, including the counts of conviction. Spivak has not even acknowledged the Court's reasoning—much less identified any flaw in the Court's reasoning. Instead, Spivak has made implied legal arguments for limiting the scope and bases of the jury's verdicts, without acknowledging the wealth of case law that forecloses those arguments. Spivak therefore has failed to show the government presented insufficient evidence for the jury to find him guilty of conspiring to commit securities fraud. The Court should deny his Rule 29 motion.

For similar reasons, Spivak's attempt to obtain a new trial based on the allegedly inconsistent verdicts fails. The sole basis for this argument is a single unpublished out-of-circuit case, *United States v. Medeiros*, No. 23-2019, 2023 WL 8752921, 2023 U.S. App. LEXIS 33535,

11

(10th Cir. Dec. 19, 2023). *Medeiros* is contrary to the long line of cases in this Circuit that precludes courts from reviewing inconsistent verdicts absent extraordinary circumstances. Even if *Medeiros* was binding law, it would at most make the acquittals relevant to the Court's inquiry, which remains the same: whether Spivak has met his burden to demonstrate "extraordinary circumstance where the evidence preponderates heavily against the verdict"—a decision that is subject to this Court's discretion. *Hughes*, 505 F.3d at 593. Spivak has not even attempted to meet this standard beyond relying on his assumption that the jury's acquittals can be treated as deeming the conspiracy to be lawful in nature. Not even *Medeiros* stands for that proposition, and no decision in this Circuit so holds.

*Medeiros*, moreover, is easily distinguishable. There, the essence of the alleged fraud was simple and straightforward: that defendants Medeiros and Greaves defrauded the government by passing off Medeiros's business as an "eligible service-disabled veteran-owned small business[]" in seeking government contracts, when Medeiros actually needed to contract with Greaves's business to use its employees and equipment to perform under the contracts. 2023 WL 8752921, at *1-2. However, while the theory was that Greaves's role was concealed, he was repeatedly presented as an express subcontractor, including in the agreements at issue in the substantive counts. *Id.* at *3. The fraud was also allegedly perpetrated solely by the trial defendants, without any other persons having pled guilty to substantive acts in furtherance of the fraud, let alone testifying and explaining how their acts furthered the fraud. Instead, the defendants testified and presented a credible "defense as to reliance on the advice of counsel." *Id.* at *5. Further, there, unlike here, the jury simply convicted on all counts, including substantive counts that the district court concluded had not even been supported by sufficient evidence under Rule 29. *Id.* at *4-5. Here, by contrast, the jury's verdicts show more careful consideration. There, it was only after

that court concluded that the jury had badly erred in convicting on the substantive counts that it then concluded that the 'acquittals' on those counts undermined the evidence as to the conspiracy. *Id.* at *4-5. That conspiracy count, moreover, had been just barely supported by legally sufficient evidence because of the major substantive weaknesses in the case as a whole. *Id.* at *4.

Perhaps most importantly, the defendants in *Medeiros*, unlike Spivak, had demonstrated there had been "eight trial errors, which 'viewed in the aggregate, seriously affected the fairness of the trial as to *all counts* and warrant[ed] a new trial'" as to all counts (including the substantive counts in the event the acquittals might be reversed). *Id.* at *5. Spivak makes no mention of those serious errors, and makes no attempt to identify any analogous errors here. But those errors were the primary basis for ordering a new trial.

The court's reliance on the acquittals, moreover, was based on the court's own analysis of the evidence, not jury acquittals. *Id.* Finally, based on a combination of the serious trial errors, crediting the defendants' advice-of-counsel defenses, and the weighing of all the evidence, the court concluded that "the verdict was against the weight of the evidence and influenced by cumulative prejudice arising from multiple trial errors," separately warranting a new trial on the conspiracy count. *Id.* The court's reasoning was that there was no basis for a substantive fraud, and so it was hard to conclude that any act that was truly *in furtherance* of the conspiracy had been committed. Here, by contrast, multiple co-defendants have testified that they took numerous acts in furtherance of the conspiracy. For these reasons, *Medeiros*, the sole basis for the new trial request as to the conspiracy, is easily distinguished.

   3. <u>The jury convicted Spivak of wire fraud because they found he schemed to defraud investors of money, not information.</u>

Spivak claims the jury convicted him on a legally improper theory of wire fraud, invalidated by *Ciminelli v. United States*, 598 U.S. 306 (2023). Spivak claims that *Ciminelli*

13

rejected the "right to control" theory of fraud, and seeks to reshape the evidence and theory of the government's case *here* into something approximating a "right to control" case—specifically, that the government only sought to show that Spivak, Mallion, and others deprived investors of information they may have wanted, such that the object of the fraud was to deprive the investors of information. But this argument fails both on the law and on the facts.

First, on the law, while *Ciminelli* may require courts to reconsider verdicts in the Second Circuit, it has little effect here in the Sixth Circuit, and zero relevance to this case. Citing only Second Circuit law, Spivak broadly claims that, "[b]efore *Ciminelli*, courts endorsed a 'right-to-control theory' of wire fraud that allowed for conviction on 'a showing that the defendant, through the withholding or inaccurate reporting of information that could impact on economic decisions, deprived some person or entity of potentially valuable economic information'" (R. 480, PageID 9012)—as opposed to depriving them of money or property. But the only "courts" in which this "right to control" theory was recognized were those in the Second Circuit. That is why *Ciminelli*'s opening sentences makes clear that the Supreme Court was "decid[ing] whether *the Second Circuit's* longstanding 'right to control' theory of fraud describes a valid basis for liability under the federal wire fraud statute." 598 U.S. at 308 (emphasis added). Indeed, in abrogating the Second Circuit's caselaw, the Supreme Court made clear it was siding *with the Sixth Circuit*, which has correctly applied the property requirement of *Cleveland v. United States*, 531 U.S. 12 (2000). *See Ciminelli*, 598 U.S. at 315 (quoting *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014) (declining to expand wire fraud beyond the bounds of traditional property rights and honest services expressly covered by 18 U.S.C. § 1346)).[2]

---

[2] True, the Ninth Circuit has also cited *Ciminelli* to define the limits of traditional fraud statutes. *See United States v. Milheiser*, 98 F.4th 935, 942 (9th Cir. 2024). Spivak, creatively

14

Because the "right-to-control" theory has never been part of Sixth Circuit law, it was nowhere found in the jury instructions in this case. The jury instructions here tracked the long-accepted and approved pattern instructions, based on Sixth Circuit law, not Second Circuit law. The government was required to prove that Spivak "knowingly participated in, devised or intended to devise a scheme to defraud in order to deprive another of money or property." (R. 461: Sept. 6, 2024 Tr., PageID 5355). The Court further defined a "scheme to defraud" as "any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations or promises." (*Id.*). Spivak cites nothing in the jury instructions that in any way runs afoul of *Ciminelli*. As a result, *Ciminelli* does not require a new trial as a matter of law.

Second, Spivak's argument also badly misses the mark on the facts. The government's theory has been evident since the indictment: Spivak schemed to defraud investors of *their money* by making material misrepresentations or omitting material facts. In Paragraph 50 of the Second Superseding Indictment, the government alleged that Spivak "knowingly devised, and intended to devise, a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises." (R. 206: Second Superseding Indictment, PageID 1444). Spivak could also be liable for aiding and abetting his co-defendants, such as

---

using brackets to replace a reference to numerous cases in that opinion ("these precedents") with simply "*Ciminelli*" in his motion (R. 480, PageID 9015), would have the Court believe that *Ciminelli* is also working a sea change in Ninth Circuit law. Not so. *Ciminelli* was only briefly cited there as the latest in the long line of caselaw, and not further discussed to reach the holding. *Milheiser*, 98 F.4th at 942. Regardless, *Milheiser* is of no moment, because, as discussed below, the fraud did not seek to deprive the investors of information, but of their money, and the investors here were deceived about the stock they were purchasing and about the terms of the purchase, which is core to "the nature of the bargain." *Id.* at 944.

15

Mallion, in their commission of wire fraud. This is quite unlike the theories of liability at issue in *Ciminelli* and the other case on which Spivak relies. *See United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2023 U.S. Dist. LEXIS 119965, at *16-17 (E.D.N.Y. July 12, 2023) (government's theory focused on the victims' ability to use the information to obtain proceeds from a transaction, not the loss of funds actually held by the victims).

The government's evidence at trial bore similarly focused on the conspirators' efforts to obtain money, not to deprive investors of information, even if depriving investors of information was part of the means by which investor money was obtained. Richard Mallion explained to the jury that he and Spivak engaged in a scheme to defraud investors so Spivak could obtain money for USLG. Mallion and Collins testified to using call rooms to drive buying, inflating demand and trading volume. Mallion testified that he and Spivak agreed that Mallion would receive 750,000 in USLG shares following the reverse merger for Mallion to sell on Spivak's behalf. The jury read Spivak's testimony to the SEC, where Spivak stated under oath how he knew he could not be involved in selling USLG's free-trading stock as USLG's CEO. The jury also heard testimony from Mallion and Loesch, and read text messages between Spivak, Mallion, and Loesch, showing Spivak inquiring about his money almost immediately after Mallion began selling. The jury read dozens of pages of text messages showing Spivak expected Mallion to sell USLG's shares on Spivak's behalf and kick him back the proceeds. All these facts show Spivak engaged in a scheme to defraud investors of their money—not to take from them, or deprive them of, mere information.

Spivak, citing isolated closing argument statements out of context, ironically focuses on the fact that hiding the truth from the investors was part of the *means* by which the scheme proceeded. He ignores the later, critical steps in the fraud—in which investor money was obtained—and claims that the purpose of the fraud was therefore to deprive investors of

16

*information*. But *Ciminelli* is about frauds where the mere deprivation of information is the *purpose* or *object* of the fraud, not an exemption from the wire fraud statute for any fraud in which withholding information is a *means* of accomplishing the fraud. Such a means, after all, is a characteristic of most fraud schemes. For that reason, it does not matter that some of the facts on which investors here were misled was 'economically valuable.' Nearly all *material* information will be 'economically valuable.' What matters is whether the deprivation of that information was the object of the fraud, as in *Ciminelli*. Here, it certainly was not. The text messages were about how much stock had been sold, not how much information had been hoarded.

As a U.S. District Judge in the Eastern District of New York recently explained, "*Ciminelli* did not reject the premise that depriving a victim of information in order to induce the victim to part with traditional property can be fraud." *United States v. An*, No. 22-CR-460 (KAM), 2024 WL 2010017, at *8 (E.D.N.Y. May 7, 2024). Rather, "*Ciminelli* simply rejected the notion that *information itself can be property*." *Id.* (alteration in original); *see also United States v. Chang*, No. 18-CR-00681 (NGG), 2024 WL 2817494, at *5 (E.D.N.Y. May 31, 2024). Similarly, here, the government never insinuated that investors had a property interest in information, or that depriving them of that information was the object of the wire fraud scheme. The government instead made the case that Spivak and misstated and misleadingly omitted material information "in order to induce the victim[s] to part with" money. *Cf. An*, 2024 WL 2010017, at *8. That is the core of the statute: misstatements to obtain money through interstate wire transmissions.

At bottom, the record shows the jury convicted Spivak for scheming to defraud unwitting investors of their money. Spivak's claim therefore has no merit and the Court should deny his motion.

17

### III.     CONCLUSION

After listening to weeks of testimony and reviewing hundreds of documents, the jury found Spivak guilty of conspiracy to commit securities fraud (Count 1) and two counts of wire fraud (Counts 27 and 28).  Spivak seeks to upset these considered verdicts.  Because he provides no meritorious basis for this Court to do so, and falls well short of meeting his burden, the Court should deny his motion.

<div style="margin-left:50%">

Respectfully submitted,

REBECCA C. LUTZKO
United States Attorney

By:    /s/ *Elliot Morrison*
Elliot Morrison (OH: 0091740)
Megan R. Miller (OH: 0085522)
Stephanie A. Wojtasik (OH: 0097858)
Assistant United States Attorneys
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3919/3855/3856
(216) 522-2403 (facsimile)
Elliot.Morrison@usdoj.gov
Megan.R.Miller@usdoj.gov
Stephanie.Wojtasik@usdoj.gov

</div>