IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-491 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO SPIVAK'S MOTION |
| Defendant. | ) | TO WITHRDRAW GUILTY PLEAS |

The United States of America, by and through undersigned counsel, hereby submits this Response in Opposition to Defendant Paul Spivak's motion to withdraw guilty pleas. (R. 484). Because he cannot "show a fair and just reason" for withdrawal under Federal Rule of Criminal Procedure 11(d)(2)(B), the Court should deny the motion, filed nearly three months after entering his guilty pleas, and proceed to sentencing, as all of the factors for considering such a motion weigh against withdrawal. *See United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994).

**I.     BACKGROUND**

      A.     PRETRIAL AND PHASE 1 TRIAL PROCEEDINGS

After his arrest and initial charges in June 2021, charges in this matter were pending against Defendant for years. Initially, only Defendant was charged, and the allegations concerned only the same conduct at issue in the present motion—the Phase 2 conspiracy and fraud directly at issue in the undercover operation. (R. 13: Indictment). Soon, those charges expanded to include the Phase 1 conspiracy, and added codefendants. (R. 33: Superseding Indictment).

After years of pretrial litigation, the case proceeded to trial in August 2024. After three weeks of trial, Defendant was convicted of the conspiracy count and two substantive wire fraud counts, and acquitted of the remaining Phase 1 charges. The case was then set to proceed to opening statements for Phase 2. (The Court is thoroughly familiar with that history, and it will not be recited in detail here.)

With the trial day set to end at approximately 4:15pm after the jury's Phase 1 verdicts, the Court at sidebar asked Defendant's counsel for their views on when to reconvene for Phase 2. (R. 463: Trial Tr. (Sept. 10, 2024), PageID 5632). Mr. Axelrod responded as follows:

> I mean, Your Honor, given the verdict, we need to figure out whether -- what decision makes sense, what course makes sense, and *it may be that we don't go to trial if we can work something out*, but I need a little more time to figure that out, and I'll do it as quickly as possible.

(*Id.*) (emphasis added).

Neither the Court nor the government placed any time pressure on Defendant's decision, and the Court emphasized the desire to "give you [defense counsel] time." (*Id.*, PageID 5633). Defendant's counsel suggested a delayed start to the following trial day to allow that time, proposing 10:00am, and the Court agreed. (*Id.*, PageID 5633-34). Over the course of that afternoon, evening, and the following morning, the parties reached agreement on the terms of Defendant's decision to forego trial on Phase 2 and Phase 3. Defendant agreed to plead guilty to all charges in Phase 2. In exchange, the government agreed to dismiss the obstruction-related charges against Defendant from Phase 3, and further agreed not to recommend that the Court treat the conduct in those charges as relevant conduct under the Guidelines. (Defendant and the Court have a copy of that agreement, which the parties executed, but it has not yet been docketed. Because of the Rules of Court governing the docketing of plea agreements, the government will not attach that agreement as an exhibit.)

B.      THE PLEA HEARING

On the morning of September 11, 2024, the Court conducted Defendant's change of plea hearing consistent with that agreement, reviewing it in detail. (*See generally* R. 478, PageID 8755-85). Counsel began by explaining that a limited plea agreement had been reached, but that "the upshot is [] that Mr. Spivak's going to plead guilty to the counts associated with Phase 2, and the government is going to dismiss the counts associated with Phase 3." (*Id.*, PageID 8757). Defendant was then placed under oath for the proceeding. (*Id.*).

The colloquy began with Defendant confirming it was his intention to plead guilty, and that he was doing so voluntarily. (*Id.*, PageID 8758). The Court then confirmed the defense's summary of the plea agreement, identifying the specific counts to which Defendant would plead guilty, and which would be dismissed. (*Id.*, PageID 8759). The Court then confirmed Defendant's education and unimpaired ability to understand the proceedings. (*Id.*, PageID 8760-61). Defendant then confirmed his intention to waive his right to go to trial, and associated trial rights. (*Id.*, PageID 8761-65). In sum, he agreed that he understood, that if he pled guilty, "there will be no trial, [he] will waive [his] right to a trial on [the charges], and [the Court] will sentence [Defendant] on the basis of [his] guilty plea." (*Id.*, PageID 8765).

After agreeing with the summarized factual basis, he affirmed that he was "pleading guilty because [he is] in fact guilty," and was doing so "own free will," not as a result of any threat. (*Id.*, PageID 8777-88). He also confirmed his detailed review of the plea agreement, having signed it and initialed each page after having "made sure [he] read and understood each provision on each page," and after having the chance to ask his attorney any questions he might have. (*Id.*, PageID 8778-79).

There was even a specific discussion under what circumstances he might be able to withdraw his pleas—which was not a general right, but would arise if the Court declined to

accept the plea agreement, specifically its provision for the government to dismiss counts.  The Court explained:  "*If the Court rejects your plea agreement and its provision that certain counts be dismissed,* the Court will so notify you at the time of sentencing and give you the opportunity to withdraw your pleas of guilty." (*Id.*, PageID 8780).  While that statement was unambiguous, undersigned counsel still sought to ensure that was further explained, contrasting this plea agreement with one under Rule 11(c)(1)(C).  (*Id.*).  The Court agreed with that the only question was its review of the plea agreement under Rule 11(c)(1)(A), and then outlined the process for Defendant in detail, under which the Court would "review the presentence report before [the Court] can formally accept the plea agreement."  (*Id.*, PageID 8780-81).  The Court also made clear that, from the wealth of evidence and other information already received, it was hard to "see[] a world in which [the Court] would not accept the plea agreement," but was obliged "to advise [Defendant] that that [rejection of the agreement] is a theoretical possibility," in which case he would have the opportunity to withdraw his pleas.  (*Id.*, PageID 8781).

After confirming that the plea agreement contained all of the promises made to Defendant, and that his counsel was confident Defendant was going to "enter a plea knowingly, voluntarily, and intelligently," the Court found that was exactly what Defendant was doing.  (*Id.*, PageID 8781-82).  Defendant then stated seven times, when asked for his plea to each of the seven counts at issue:  "Guilty."  (*Id.*, PageID 8782-83).  The Court then did accept his guilty pleas, while still reserving decision on the plea agreement:

> The Court accepts your pleas and makes findings of guilt as to Counts 2, 20, 22, 44, 45, 46, and 47 of the second superseding indictment.  Further, the Court finds that the pleas are supported by an independent basis in fact containing all of the essential elements of the offenses.

(*Id.*, PageID 8783 (line space omitted)).

4

C.    THE PHASE 2 TRIAL

Following Defendant's guilty pleas, a week-long trial went forward as to most of those same counts, but only as to codefendant Charles Scott. The trial was much shorter than it would have been without the jury having already received extensive background evidence from the Phase 1 trial. Scott, who featured in the government's recordings less than Defendant, was convicted of the securities fraud conspiracy and the substantive securities fraud counts, but was acquitted of the wire fraud charges.

D.    THE INSTANT MOTION

Eighty-two days later, Defendant filed the instant motion, seeking to withdraw his guilty pleas. Defendant makes a number of broad claims. Defendant, through counsel's legal memorandum, claims that he was "exhausted" after his Phase 1 trial, and only "buckled momentarily" when he "hastily decided" to plead guilty in order to avoid sitting through another trial, and that he "wishes to continue to fight for his innocence." (R. 484: Mot., PageID 9199-9200). These claims are contrary to his sworn statements under oath at the plea hearing. And Defendant has provided zero evidence to support his motion, lacking even an affidavit from Defendant to attest his views or understanding.

Following the filing of the motion, undersigned counsel quickly corresponded with new defense counsel, inquiring (1) whether the motion had been filed with Defendant's approval and understanding of paragraph 23 of his plea agreement, under which filing of the plea agreement would relieve the government of all obligations under the plea agreement; (2) whether he intended to proceed with the motion or wished to discuss withdrawing the motion; and (3) whether Defendant intended to submit any evidence to support his claims, such as an affidavit. Counsel affirmed that Defendant was aware of the potential consequences and had chosen, and still wished, to proceed with the motion. Counsel also indicated the intent to file an

5

affidavit to provide the Court some evidence. To the government's knowledge, no such affidavit has been tendered to the Court.

## II. ARGUMENT

Defendant does not cite a single case even considering—much less granting—a motion to withdraw guilty pleas under circumstances like those found here. The government is left with little to which it can respond in terms of an application of the law to the facts of this case. But a brief review of the record and application of the *Bashara* factors to that record shows that Defendant has not met the standard for withdrawing his plea and resetting the matter for another Phase 2 trial. He also has not even attempted to justify the primary relief sought: dismissal of these counts.

### A. DEFENDANT CANNOT SHOW A FAIR AND JUST REASON FOR WITHDRAWAL.

Even assuming Defendant's claims are genuine—as opposed to the gamesmanship that his delay and changing accounts suggest—they would not amount to "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In considering Defendant's reasons for seeking to withdraw, courts in this Circuit consider the following factors, among others:

(1) the amount of time that elapsed between the plea and the motion to withdraw it;

(2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings;

(3) whether the defendant has asserted or maintained his innocence;

(4) the circumstances underlying the entry of the guilty plea;

(5) the defendant's nature and background;

(6) the degree to which the defendant has had prior experience with the criminal justice system; and

(7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994) (line spaces added). All of the *Bashara* factors counsel against permitting him to withdraw his plea.

        1.      <u>Defendant's delay and the absence of a valid reason for failing to make his motion sooner.</u>

The first two factors weigh strongly and decisively against Defendant. Defendant waited until nearly three months—82 days—after his September plea hearing to file his motion. This type of delay alone justifies denial of the motion. *See United States v. Durham*, 178 F.3d 796, 798 (6th Cir. 1999) (77-day delay was "strongest factor supporting the district court's denial" of motion). The Circuit "has denied motions to withdraw based on even shorter gaps of time." *Id.* (citing *United States v. Baez,* 87 F.3d 805, 807 (6th Cir.1996) (67-day delay had also been considered the strongest factor); *United States v. Goldberg,* 862 F.2d 101, 104 (6th Cir. 1988) (55-day delay was "lengthy")). Indeed, the Circuit has said the following regarding a nearly identical delay, and held that the delay strongly supported denial of the motion: "[Defendant] waited until *eighty-three days* after the entry of his plea to file the formal motion to withdraw his plea. This court has previously found even shorter periods of delay to be problematic." *United States v. Ford*, 15 F. App'x 303, 307 (6th Cir. 2001) (emphasis added).

Defendant has claimed that this delay should be excused, proffering a purportedly valid reason: that his new counsel needed time to familiarize herself with the record. This argument suffers from a number of flaws. *First*, Defendant's long-time trial counsel was still his lead counsel in this matter until *after* the filing of this motion. If there were any questions about the record or discovery, they could be readily answered. If the mere hiring of new counsel—additional counsel, not even substitute counsel—started a new and separate clock running, this primary consideration under *Bashara* would be easily evaded and gamed.

*Second*, an assertion of innocence is not about what was or wasn't admitted at trial. Defendant either believed he was innocent, or he didn't. If he believed he was innocent and had mistakenly said the opposite under oath at his plea hearing only because he was "exhausted" and wanted to avoid the "ordeal" of the Phase 2 trial—considerably less of an ordeal than the Phase 1 trial by any measure save the Defendant's likely embarrassment, or at least regret, on hearing the recordings—he could have said so within a few days. He didn't. Instead, he seems to have waited for an appellate attorney to review his case an assess his chances on appeal, and possibly also on succeeding in this motion. That is gamesmanship, not a genuine assertion of innocence. As the Sixth Circuit has recognized, "where a defendant is aware of the condition or reason for a plea withdrawal, at the time the guilty plea is entered, a case for withdrawal is weaker." *Ford*, 15 F. App'x at 309 (quoting *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987)). What matters is what Defendant knew, not what his counsel knew. Nothing has changed since his plea hearing, and certainly not since the days immediately following the hearing, by which time he would have recovered from any "exhaustion."

*Third*, even if finding appellate counsel was needed (which it was not), the delay here would still weigh against the motion. New counsel filed her notice of appearance on October 16, 2024. And the evidence for Phase 2 was not only in Relativity, but also in the limited trial exhibits that had long been marked and turned over to prepare for trial. There could have been no obstacle to reviewing those by new counsel, and none is stated. The Sixth Circuit has noted that a 22-day delay from plea to motion weighs against finding a fair and just reason, citing with approval the Fifth Circuit's reasoning that a defendant cannot "wait *several weeks*, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty." *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (emphasis added) (quoting *United States v. Carr*, 740

8

F.2d 339 (5th Cir. 1984)). Here, Defendant filed his motion more than six weeks after his new counsel filed her appearance.

Accordingly, the timing of Defendant's motion weighs strongly against withdrawal.

>    2. <u>Defendant's claim to have made a belated assertion of innocence does not weigh in his favor.</u>

Defendant of course has not maintained his innocence, having admitted his guilt before this Court in a lengthy plea hearing. Defendant's primary assertion of innocence is not in any record evidence before this Court, but in his counsel's legal memorandum. Even when an affidavit was discussed and represented to be forthcoming, it was not submitted. Again, this is legal strategy, not a genuine assertion of innocence. For these reasons, Defendant's motion should not be considered an assertion of innocence at all, and even to the extent that it can be, it does not weigh in favor of withdrawal.

Even if Defendant were belatedly to submit an affidavit or adopt his counsel's assertions at a later hearing, the Court should not take Defendant's claims at face value. As the Sixth Circuit has explained, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *United States v. Hobbs*, 953 F.3d 853, 857 (6th Cir. 2020). Here, the contemporaneous evidence is overwhelming: Defendant knew what he was doing, and made the decision to plead guilty because he is guilty, as he said under oath.

>    3. <u>The circumstances underlying the plea also do not weigh in his favor, and together with his intelligence and sophistication, offset any limits in his prior criminal justice experience.</u>

As set forth above, on top of extensive pretrial litigation, unlike nearly every defendant who pleads guilty, Defendant came to his plea hearing after sitting through *weeks* of trial,

9

including after sitting through the reading of the full jury instructions for each of the charges at issue, and after the government had produced not only all of the trial exhibits repeatedly—initially in discovery and then again as marked exhibits—but also the *Jencks* material. Over a lengthy hearing, in which the Court reviewed in detail Defendant's understanding of his decision to plead guilty and the voluntary nature of that decision, Defendant pled guilty to each charge, and never once expressed the slightest hesitation about his decision. The circumstances of this guilty plea weigh heavily against withdrawal. *See, e.g.*, *United States v. Franklin*, 462 F. App'x 538, 542-43 (6th Cir. 2012) (finding that circumstances factor supported affirming the denial of a motion to withdraw where a defendant's "guilty plea was made knowingly and voluntarily").

For similar reasons, as to his nature and background and criminal justice experience, even assuming Defendant had *limited* prior criminal justice experience, he has spent no small amount of time with this Court and with his prior counsel, having spent many hours in federal court. He knew well the trial rights he was waiving. More importantly, Defendant is an intelligent, educated, and sophisticated man. The Court repeatedly heard witnesses describe his intelligence, sometimes describing him as a "genius." Defendant's background compares very favorably to that of other defendants the Sixth Circuit has considered fully capable of comprehending the charges against them and the consequences of pleading guilty. *See United States v. Martin*, 668 F.3d 787, 796 (6th Cir. 2012) (only "some high school education" and "claims that he is 'not that smart'"); *United States v. Collins*, 311 F. App'x 741, 746 (6th Cir. 2008) (eighth-grade education). There is no indication that Defendant lacked the ability to understand the clear and orderly plea hearing.

Furthermore, Defendant is mistaken in stating that he "lacks any criminal record." (R. 484: Mot., PageID 9200). He may not have prior convictions that score points, but he has

had three prior criminal cases, and has at least one criminal conviction. (R. 495: Draft PSR, PageID 9287-88). His experience with the criminal justice system, his intelligence and sophistication, and his detailed experience in this matter combine to eliminate any doubt that his was "hastily entered plea made with unsure heart and confused mind." *Cf. United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)

        4.    <u>The government would suffer substantial prejudice.</u>

As an initial matter, this prejudice factor can only weigh against withdrawal, and the mere absence of prejudice cannot establish a fair and just reason. *See Ford*, 15 F. App'x at 310 ("a lack of prejudice does not require that the motion be granted"), *Spencer*, 836 F.2d at 238 ("If the defendant establishes such a reason, it is then appropriate to consider whether the government would be prejudiced by withdrawal of the plea." (quoting advisory committee note)).

In any event, Defendant is incorrect in suggesting there would be no prejudice to the government from withdrawal of his pleas. The government was, indeed, prepared to put on its case for the Phase 2 trial, and has done much of the preparation work. The trouble with Defendant's argument is that, by Defendant's choice to avoid trial, the government (and the jury and the Court) all *did* the additional work of *actually holding a significant trial*,[1] which work would have to be needlessly repeated. As the Court heard and saw, the evidence in that phase against Defendant (even when tailored to trying only Scott) was overwhelming as to Defendant,

---

[1] Defendant spills much ink on his wishful interpretation of the strength the government's evidence *as to Phase 1*. But the question is whether he pled *to the Phase 2 charges* with a confused mind. To whatever extent the verdicts in Phase 1 reveal some weakness in the evidence as to Phase 2—or whether the verdicts illuminate the relative strength of the evidence given the conviction of Count 1 *without* the extensive recordings from Phase 2—Defendant was aware of those verdicts when he made his decision to plead guilty.

11

with numerous explicit recordings about inflating the stock price, deceiving investors, and using falsified documents to cover his tracks. What's more, the work to be repeated would also include much of the evidence evinced in Phase 1, as necessary background to Phase 2.

> B. NOTHING IN THE LAW SUPPORTS DISMISSAL OF THESE COUNTS, AND DEFENDANT HAS NOT EVEN MADE AN ARGUMENT FOR SUCH RELIEF.

The government above has responded to the arguments presented in Defendant's motion, but notes briefly that Defendant's motion only sought to justify the "[a]lternative[]" relief requested: "to allow him to withdraw the guilty pleas and then set his case for trial." (R. 484: Mot., PageID 9197). Defendant's first request, stated but never again addressed, was for the Court to allow withdrawal "and then dismiss the charges against him." (*Id.*). But Defendant nowhere offered any legal basis for dismissing the charges to which he has pled guilty. Nor is the government aware of any such basis. The only pending motion seeking dismissal is his Rule 29 motion, seeking dismissal of the Phase 1 counts of conviction for alleged failure to present sufficient evidence *at trial*. Of course, trial for these Phase 2 counts was avoided by Defendant's guilty plea. So there is no basis for dismissing the Phase 2 counts—to say nothing of the Phase 3 counts, which Defendant ignores.

12

**III.  CONCLUSION**

For these reasons, Defendant's motion should be denied, and he should be sentenced.

                                          Respectfully submitted,

                                          CAROL M. SKUTNIK
                                          Acting United States Attorney

                                  By:  /s/ *Elliot Morrison*
                                          Elliot Morrison (OH: 0091740)
                                          Megan R. Miller (OH: 0085522)
                                          Stephanie A. Wojtasik (OH: 0097858)
                                          Assistant United States Attorneys
                                          801 West Superior Avenue, Suite 400
                                          Cleveland, OH 44113
                                          (216) 622-3919/3855/3856
                                          (216) 522-2403 (facsimile)
                                          Elliot.Morrison@usdoj.gov
                                          Megan.R.Miller@usdoj.gov
                                          Stephanie.Wojtasik@usdoj.gov