IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:21-cr-491 |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, | ) | |
|     Defendant. | ) | |
| | ) | |

**OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT**

Undersigned counsel respectfully submits these objections to the probation department's presentence investigation report which recommends a 20-year sentence of incarceration for a first-time offender, aged 65, and acquitted of 29 of 31 counts at trial. A motion to withdraw his guilty pleas in related counts is still pending before this Court.

**I.      Failure to Account for Acquitted Conduct in Sentencing**

Counsel objects the probation department uses acquitted conduct in determining loss amounts.  The Federal Sentencing Commission, after considerable discussion, amended §1B1.3 (Relevant Conduct) to exclude federally acquitted conduct from the scope of relevant conduct considered under the sentencing guidelines, while not abrogating a court's authority under 18 U.S.C. §3661.

Application note 10 states: Acquitted Conduct —Subsection (c) provides that relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct establishes, in whole or in part, the instant offense of conviction. There may be cases in which certain conduct underlies both an acquitted charge and the instant

1

offense of conviction. In those cases, the court is in the best position to determine whether such overlapping conduct establishes, in whole or in part, the instant offense of conviction and therefore qualifies as relevant conduct."

Counsel further objections that the probation department does not intend to parse out the acquitted conduct counts from the total loss amount so the district court can perform its duty to determine the correct loss amount at a sentencing proceeding. The probation department's recommendation in this matter fails to even acknowledge that Spivak was acquitted of 29 counts. In fact, reading the PSR, one would believe he had been convicted of all counts for which he was indicted, but, of course, that is not accurate. Counsel objects to the use of acquitted conduct and requests the probation department provide revised loss amounts that exclude those counts in its calculations.

## II.    Loss Calculation Inaccuracies

The Probation Report calculates a total loss of $13,740,972.90, but this amount includes both intended and actual losses without clear differentiation. The defense objects on the following grounds:  The intended loss does not accurately represent a probable outcome, as the artificially inflated stock prices were speculative, market fluctuations and investor decisions—independent of the Spivak's actions—contributed to losses, which should not be fully attributed to Spivak; and the Government's calculation method lacks precision in identifying the actual loss to individual

victims. Under §2B1.1(E)(ix), courts must consider external market factors when estimating actual losses.[1] That does not appear to have been done here, and Spivak respectfully objects.

### III. Erroneous Vulnerable Victim Enhancements (USSG §3A1.1)

The Probation Office applied a 4-level enhancement based on the claim that Spivak targeted elderly or disabled investors. The defense disputes this enhancement for the following reasons: There is no direct evidence that Spivak specifically sought out vulnerable victims; many investors were sophisticated individuals with financial experience; and the percentage of elderly investors is coincidental rather than a result of targeted fraudulent practices.

The Commentary to §3A1.1 makes it clear this enhancement does not apply in this case: "Subsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability. The adjustment would apply, for example, in a fraud case in which the defendant marketed an ineffective cancer cure or in a

---

[1] (ix) Fraudulent Inflation or Deflation in Value of Securities or Commodities. --In a case involving the fraudulent inflation or deflation in the value of a publicly traded security or commodity, the court in determining loss may use any method that is appropriate and practicable under the circumstances. One such method the court may consider is a method under which the actual loss attributable to the change in value of the security or commodity is the amount determined by:
(I) calculating the difference between the average price of the security or commodity during the period that the fraud occurred and the average price of the security or commodity during the 90-day period after the fraud was disclosed to the market, and
(II) multiplying the difference in average price by the number of shares outstanding.

In determining whether the amount so determined is a reasonable estimate of the actual loss attributable to the change in value of the security or commodity, the court may consider, among other factors, the extent to which the amount so determined includes significant changes in value not resulting from the offense (e.g., changes caused by external market forces, such as changed economic circumstances, changed investor expectations, and new industry-specific or firm-specific facts, conditions, or events)

robbery in which the defendant selected a handicapped victim. But it would not apply in a case in which the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." Paul Spivak sought out sophisticated investors, or accredited investors, to purchase stock in in his company. It is only incidental that some of these investors were elderly or disabled. *See United States v. Smith*, 39 F.3d 119, 124 (6th Cir. 1994) ("Therefore, in order to enhance a defendant's base offense level under U.S.S.G. § 3A1.1, the evidence must show that the defendant knew his victim was unusually vulnerable and that he perpetrated a crime on him because he was vulnerable. It is not enough to show that the victim happened to be vulnerable at the time the crime occurred."); *United States v. Robinson*, 152 F.3d 507 (6th Cir. 1998) (same).

### IV. Leadership Role Enhancement (USSG §3B1.1(a))

A 4-level enhancement was applied for Spivak's role as an organizer/leader. The defense disputes this characterization and objects for the following reasons: The report identifies multiple key players, including Charles Scott, and Richard Mallion, who operated independently of Spivak; Spivak did not have exclusive control over the fraudulent activities and did not dictate all co-conspirators' actions; and given the decentralized nature of the operation, applying the maximum enhancement is unwarranted.

Additionally, the Government's Response to the Rule 29 claimed, "Spivak could also be liable for aiding and abetting his co-defendants, such as Mallion, in their commission of wire fraud." This would appear to be incompatible with probation's claim that Spivak has a leadership role.

### V. Sophisticated Means Enhancement (USSG §2B1.1(b)(10)(C))

The government applied a 2-level enhancement for the use of sophisticated means. The defense objects for the following reasons: While the scheme was complex, it did not employ extraordinary deception beyond standard securities fraud cases; the methods used—press releases and stock promotions—are not inherently sophisticated, and other conspirators played equally significant roles in structuring and executing transactions.

"Sophisticated means" means *especially complex* or *especially intricate offense* conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means. Sophisticated means is not appropriate in this case because there was nothing particularly sophisticated about it. The alleged criminal conduct here merely consisted of selling stock. There were no offshore accounts, or shell companies, or fictitious entities. Respectfully, this enhancement should not be applied in this case.

### VI. Violation of Securities Law Enhancement (USSG §2B1.1(b)(20)(i))

Spivak objects because he was acquitted of all substantive securities fraud counts.

### VII. Obstruction of Justice Enhancement (USSG §3C1.1)

Probation argues for a +2 enhancement for obstruction of justice based on three alleged events that appear to be recounted in paragraphs 59-62. These acts include: Purported lies made to the SEC on June 30, 2019 (¶59); communications Spivak had with his wife regarding a bag of dead rodents which the probation office characterizes as "intimidating a witness" around June 21,

5

2021; (¶60); a "false declaration" made before a magistrate judge regarding a mirror with a hidden compartment. (¶61); and Spivak's removal of information in his home related to Richard Mallion (¶62).

Paul Spivak objects. The government has the burden of proving obstruction of justice by a preponderance of the evidence standard. *United States v. Jackson*, 877 F.3d 231 (6th Cir. 2017). Spivak disputes that he intentionally obstructed justice and that any inaccuracies asserted by the Government were the product of either confusion or misunderstandings, or lack of memory. As the application notes make clear: *Limitations on Applicability of Adjustment* —This provision is not intended to punish a defendant for the exercise of a constitutional right. A defendant's denial of guilt (other than a denial of guilt under oath that constitutes perjury), refusal to admit guilt or provide information to a probation officer, or refusal to enter a plea of guilty is not a basis for application of this provision. In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

**VIII. Probation's Sentencing Recommendation is Wildly Disproportionate for a 65-year-old, First-Time Offender, Convicted of Conspiracy to Commit Securities Fraud (And Acquitted of All Substantive Counts of Securities Fraud) and Two Counts of Wire Fraud.**

According to the Judiciary Sentencing Information (JSIN), there is insufficient data from the past 5 years to even calculate what an average prison sentence would be for someone who has received this draconian of a probation PSR, suggesting this PSR is an outlier.[2] But clearly, a

---

[2] Counsel looked up Guideline §2X1.1, final offense level of 43, and criminal history category of 1 (*last visited* 1/19/25).

6

functional life sentence for someone who was acquitted of nearly all counts, who is 65 years old and with no criminal history, is extraordinarily harsh and disproportionate.

### IX. Factual Inaccuracy

Spivak respectfully objects to this factual inaccuracy: Paragraph 101 states, in relevant part, "The defendant stated that the US Light Group business was sold in 2022, for $5,499, 656, for which the payments are outstanding." This is an incorrect statement. In 2022, Migmarine Corp., a fiberglass manufacturing company founded in 2003 by Paul Spivak, was sold to USLG in consideration for a $5,000,000 promissory note. Spivak has received no payments from USLG toward the outstanding note. The remaining $499,656 referenced in the figure constitutes the funds that Spivak loaned to USLG for use toward ongoing operations. Defendant has not been repaid.

Spivak also objects to use of the term "kickbacks" to describe commission payments.

### X. First Time Offender

Spivak should additionally have his base offense level reduced by 2 levels because he is a first-time offender.

### CONCLUSION

For these reasons, Paul Spivak objects to the probation department's PSR.

> Respectfully submitted,
>
> /s/ Elizabeth Franklin-Best
> Elizabeth Franklin-Best, P.C.
> 3710 Landmark Drive, Suite 113
> Columbia, South Carolina 29204
> (803) 445-1333
> elizabeth@franklinbestlaw.com

January 22, 2025