IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:21-CR-491 |
| | ) | |
| Plaintiff, | ) | JUDGE J. PHILIP CALABRESE |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO SPIVAK'S MOTION |
| Defendant. | ) | TO HOLD PROCEEDINGS IN |
| | ) | ABEYANCE |

The United States of America, by and through undersigned counsel, hereby submits this Response in Opposition to Defendant Paul Spivak's "Motion to Hold Proceedings in Abeyance Pending the United States Supreme Court's Opinion in *Kousisis*."  (R. 519 (citing *Kousisis v. United States*, S. Ct. No. 23-909)).

## I.  BACKGROUND

The parties have already discussed at length the events leading up to Defendant's convictions at trial and his additional convictions by guilty pleas.  The Court is also thoroughly familiar with the matter from its own experience with the case.  The government will not unnecessarily repeat that background here.

## II.  ARGUMENT

Defendant cites no case in which a stay of proceedings has been granted based on *Kousisis*, or under equivalent circumstances, even assuming his preferred reading of the history of *Kousisis*.  Nor does Defendant proffer a standard for when district courts should take the rare step of holding in abeyance proceedings in a criminal case, or otherwise stay proceedings.  Of course, because such a stay is so rare, little case law exists to set forth such a standard.  But it is

well established that, as a general rule, the Court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *See Clinton v. Jones*, 520 U.S. 681, 706 (1997). Here, with trial concluded, "good cause" is required for any "unnecessary delay" in "impos[ing] sentence." *See* Fed. R. Crim. P. 32(b).

Defendant has failed to demonstrate good cause for further delay. The Court should decline to exercise its discretion to grant Defendant the exceptional relief sought, both because *Kousisis* is unlikely to affect the convictions here, and because adopting a policy of granting stays based on speculation about future decisions is unworkable and would bog down district court dockets.

    A.    <u>*KOUSISIS* IS UNLIKELY TO CHANGE THE LAW OF THIS CIRCUIT TO BENEFIT DEFENDANT.</u>

A decision in *Kousisis*—even assuming it favors the defendants there—is unlikely to have any effect on this case, and the expectation of an opinion presents no basis for delaying these proceedings any further.

While purporting to base his motion on *Kousisis*, Defendant does not address the facts of that case. The facts of *Kousisis*, like those of *Ciminelli v. United States*, 598 U.S. 306 (2023), bear no relation to the facts of this case. The fraud in *Kousisis* related to government contracting, for misrepresentations concerning not the economic core of the contract, but whether the defendants were qualified to receive the contracts based on government policy goals—specifically, whether they were "disadvantaged business enterprises" or "DBEs," owned by persons of particular demographics, unrelated to their qualifications to complete the work. *United States v. Kousisis*, 82 F.4th 230, 233 (3d Cir. 2023). The primary harm to the government, in that instance, was that it would not be advancing its policy goals of aiding DBEs, secured by contractual provisions, and the district court had instructed that the right to

2

compliance with the contract's DBE requirements was a property right within the meaning of the statute. *Id.* at 243-44. These facts are nothing like the facts at issue here.

So too with *Ciminelli*, which the government has already addressed in responding to Defendant's motion for judgment of acquittal or new trial, as the object of the fraud here was not the deprivation of valuable information, but the deprivation of money. (R. 517: USA Resp. to Mot. for JMOL, PageID 10190-91). Defendant has not made any new argument regarding *Ciminelli*, beyond (1) claiming that the Supreme Court had, in granting certiorari, "evidenced its interest" in the issues raised, and (2) noting that the *Ciminelli* petitioners cited the Sixth Circuit's decision in *United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014). The government sees no point in reading tea leaves from a certiorari grant generally. And making inferences from a certiorari grant is particularly pointless when the Supreme Court has already issued its decision in the matter, as it did in *Ciminelli* well before the trial here. The same logic applies to the *Ciminelli* petitioner's reliance on *Sadler*, as it is the opinion issued, rather than the opinion sought, that matters. Indeed, in this matter, it was the government that first cited *Sadler*, explaining that it was particularly hard to find any change to Sixth Circuit law in *Ciminelli* because the Supreme Court, citing *Sadler* with approval, expressly sided with the Sixth Circuit in resolving the circuit split at issue. (R. 517: USA Resp. to Mot. for JMOL, PageID 10191).

Regardless, *Sadler*, which is discussed in far more detail than *Ciminelli* or *Kousisis* in Defendant's motion, provides no basis for pausing this matter, in part because it too concerns very different facts than those at issue here. The misrepresentations in *Sadler* concerned the defendant's attractiveness as a customer—whether she would be permitted to purchase controlled substances from the sellers—not facts of any economic significance. Specifically, she had made herself appear to be an acceptable customer by using a false name and falsely stating

3

"that the drugs were being used to serve 'indigent' patients." *Sadler*, 750 F.3d at 590. She then paid full price for the drugs. *Id.* In doing so, she had not deprived anyone of any money or property. Indeed, she had been the one paying the money. Because she had paid a price set by the sellers for reasons unrelated to her name or her intended use of the drugs—the subjects of her misrepresentation—it could not be said that the sellers had been deprived of the drugs themselves, since "unfairly depriving" them of the drugs was not the aim of those misrepresentations. *Id.*

Again, the allegations and evidence here were far different than in *Ciminelli*, *Kousisis*, or *Sadler*. Defendant orchestrated for a network of underlings to manipulate the trading volume and price of USLG free-trading stock through the use of call rooms, while at the same time hawking restricted stock directly to investors, with the inflated price that resulted from the inflated trading activity used as a primary selling point, all while further misleading restricted investors about the terms of the transaction. Among other things, those restricted investors were misled about whether unregistered brokers were receiving outsized commissions, which would have called into question the value of the stock, and about how long they would be restricted from selling the stock. Defendant and others then planned in 2021 to vastly expand the free-trading side of the scheme, and took steps towards doing so. More specifically, Defendant's arguments concern his trial convictions for wire fraud, and while Defendant was acquitted of most wire fraud counts, those he was convicted of were for Mallion's transfers to USLG, returning to Spivak a share of Mallion's profits from selling free-trading shares to investors.

In addition, *Sadler* is a particularly unlikely ground for staying this matter given its source and vintage, and the *Kousisis* petitioners' citation of Sadler only detracts from the chance that any decision in *Kousisis* would alter the applicable law. Simply put, *Sadler* is longstanding

4

law of this Circuit, so it cannot be a reason to delay things here. Further, the *Kousisis* petitioners rely on it to ask the Supreme Court to reject the Third Circuit's holding in favor of *Sadler*'s—that is, they have argued that there is a circuit split, and that the Supreme Court should adopt the position of the Sixth Circuit and other circuits "rejecting the fraudulent inducement theory" of wire fraud. (*Kousisis*, Pet. at 22 (characterizing *Sadler* as one of the "other circuits [that] align[s] with the Second in rejecting the fraudulent inducement theory"); *see also* Kousisis Petitioner Br. at 11 (characterizing *Sadler* as an opinion "reversing conviction secured under the [fraudulent inducement] theory").[1] So even a favorable decision for the petitioners there is only likely to reaffirm existing Sixth Circuit law.

### B. SPECULATION ABOUT A FUTURE SUPREME COURT DECISION IS GENERALLY NOT A REASON TO HOLD CRIMINAL CASES IN ABEYANCE

All of the foregoing assumes we will soon receive a decision in *Kousisis*, that it will be favorable to the petitioners there, and—most speculative—that the particular reasoning of the decision, which Defendant hopes will resolve a Circuit split in favor of longstanding Sixth Circuit law, will go further than the Sixth Circuit has gone in some unspecified manner that will be material to some pending motion by Defendant. But speculation is not good cause, and speculation is all that Defendant can offer about a *Kousisis* opinion.

To begin, while Supreme Court cases are generally resolved by roughly the end of June of a given term, it is not clear that a decision on the merits will be forthcoming. Justice Gorsuch

---

[1] The Supreme Court filings in *Kousisis* are available at https://www.supremecourt.gov/docket/docketfiles/html/public/23-909.html, including the Petition (https://www.supremecourt.gov/DocketPDF/23-909/300948/20240220165304877_pet%20for%20cert%20Kousisis%20Alpha%2002%2020%202024.pdf) and the Petitioner's Brief (https://www.supremecourt.gov/DocketPDF/23-909/322808/20240819151501920_Petitioners%20Brief%20-%20Kousisis.pdf).

during argument wondered, if the record was as represented regarding the additional costs that the government had been willing to pay for the contracts, "why are we here?" (Kousisis Tr. at 56, *available at* https://www.supremecourt.gov/oral_arguments/argument_transcripts/2024/23-909_b97c.pdf.) He posited a resolution based on the facts rather than the contested legal disputes. *Id.* at 55-56.

Regardless, it is well established that "grants of certiorari do not themselves change the law." *Schwab v. Sec'y, Dep't of Corr.*, 507 F.3d 1297, 1298 (11th Cir. 2007). The work of district courts is to apply the law as it exists. A rule under which the Supreme Court's granting certiorari on an issue of criminal law entailed a stay of proceedings for all criminal matters in district courts that might be affected would prove unworkable, widely disrupting pending cases. Nor is there any need for such delay. Any changes in the law, after all, could still be argued in any appeals. Tellingly, Defendant has not pointed to a single case in which a prosecution under 18 U.S.C. § 1343 has been stayed pending a decision in *Kousisis*—let alone a trend in which many cases, including those with facts that are far afield from *Kousisis*, are being stayed. This Court should not be the first to take that extraordinary step.

6

## III. CONCLUSION

For these reasons, Defendant's motion should be denied, and he should be sentenced as presently scheduled.

                Respectfully submitted,

                CAROL M. SKUTNIK
                Acting United States Attorney

        By: /s/ *Elliot Morrison*
                Elliot Morrison (OH: 0091740)
                Megan R. Miller (OH: 0085522)
                Stephanie A. Wojtasik (OH: 0097858)
                Assistant United States Attorneys
                801 West Superior Avenue, Suite 400
                Cleveland, OH 44113
                (216) 622-3919/3855/3856
                Elliot.Morrison@usdoj.gov
                Megan.R.Miller@usdoj.gov
                Stephanie.Wojtasik@usdoj.gov