1                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
2                         EASTERN DIVISION


3
      UNITED STATES OF AMERICA,      ) Case No. 1:21-cr-491-2
4                                     )
                 Plaintiff,           )
5                                     )
           vs.                        ) Cleveland, Ohio
6                                     ) Monday, January 6, 2025
      OLGA SMIRNOVA,                  )
7                                     )
                 Defendant.           )
8

9              TRANSCRIPT OF SENTENCING PROCEEDINGS
             BEFORE THE HONORABLE J. PHILIP CALABRESE
10                 UNITED STATES DISTRICT JUDGE

11    APPEARANCES:

12    For the Government:        **Elliot D. Morrison, AUSA**
                                 **Megan R. Miller, AUSA**
13                               **Stephanie Wojtasik, AUSA**
                                 U.S. ATTORNEY'S OFFICE - CLEVELAND
14                               801 West Superior Avenue
                                 Suite 400
15                               Cleveland, OH 44113
                                 216.622.3600
16
      For the Defendant:         **John F. McCaffrey, Esq.**
17                               TUCKER ELLIS LLP
                                 950 Main Avenue
18                               Suite 1100
                                 Cleveland, OH 44113
19                               216.592.5000

20    For Probation:            **Kelly Bowen**

21    Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
                                 United States District Court
22                               801 West Superior Avenue
                                 Court Reporters 7-189
23                               Cleveland, Ohio 44113
                                 216.357.7036
24                               Gregory_Mizanin@ohnd.uscourts.gov

25       Proceedings recorded by mechanical stenography; transcript
            produced with computer-aided transcription.

```
 1                      MONDAY, JANUARY 6, 2025

 2                            - - -

 3            (Proceedings commenced at 2:00 p.m.)

 4                            - - -

 5            THE COURT:  Good afternoon.

 6        We're on the record in Case Number 1:21-cr-491-2, the

 7    United States of America versus Olga Smirnova, and we are

 8    scheduled for sentencing today.

 9        Counsel, will you please state your appearances for

10    the record.

11                MR. MORRISON:  Thank you, Your Honor.

12        On behalf of the United States, AUSA Elliot Morrison.

13                MS. MILLER:  Good afternoon, Your Honor.

14        AUSA Megan Miller.

15                MS. WOJTASIK:  Good afternoon, Your Honor.

16        AUSA Steph Wojtasik.

17                MR. MORRISON:  And with counsel at the table

18    is the United States representative, Special Agent Anthony

19    Fry.

20                THE COURT:  All right.  Thank you.

21                MR. MCCAFFREY:  Judge Calabrese, good

22    afternoon.

23        John McCaffrey, and I am at the table with Ms. Olga

24    Smirnova.

25                THE COURT:  All right.  Good afternoon.  Thank
```

1    you.

2         And do we have a representative from the probation

3    office?

4              MS. BOWEN:  Good afternoon, Your Honor.

5         Kelly Bowen.

6              THE COURT:  Good afternoon.

7         And you're the officer who prepared the presentence

8    investigation and report, correct?

9              MS. BOWEN:  Yes, Your Honor.

10             THE COURT:  All right.  Thank you.

11        On August 12th, 2024, Ms. Smirnova entered a plea of

12   guilty to Count 2 of the second superseding indictment.

13        The plea agreement in this case contained an agreement

14   to dismiss Count 1.  Does the United States intend to make

15   that motion at this time?

16             MR. MORRISON:  We do intend to make that

17   motion, Your Honor, and we do move to dismiss Count 1.

18             THE COURT:  The Court grants the motion,

19   finding that Ms. Smirnova's plea of guilty to Count 2

20   adequately reflects the seriousness of her offense.  For

21   that reason, and based on my review of the presentence

22   investigation and report, the Court accepts the terms of the

23   plea agreement as well.

24        Count 2 does not have an identifiable victim, if I

25   follow the dance card -- to be a little too colloquial -- in

1    this case.

2              MR. MORRISON:  It does not have an identified

3    victim other than essentially the kind of undercover

4    investors, the FBI posing as investors, so there's a federal

5    government victim to that extent.

6              THE COURT:  But no identifiable victim

7    requiring notice under the statute?

8              MR. MORRISON:  I see where you're going.

9         And, yes, that's exactly right.  No CVRA victim, Your

10   Honor.

11             THE COURT:  All right.  Thank you.

12        And has your office received any request to be heard

13   today?

14             MR. MORRISON:  No, Your Honor.  We have not.

15             THE COURT:  Ms. Smirnova, for your benefit and

16   the benefit of others present in the courtroom today as

17   well, I just wanted to take a moment and outline briefly how

18   we will proceed.

19        First, we will review the presentence investigation

20   and report and address any issues or objections to the

21   report that you and your attorney or the United States have

22   to the report.  The United States Probation officer prepared

23   this report, which is a lengthy document that includes a

24   great deal of information about the offense and your role in

25   it.  It goes beyond that.  It includes additional

1    information as well, a great deal of information about you,

2    your background and upbringing, family circumstances and so

3    forth.  That information helps provide a more complete

4    picture for me of who you are beyond just the events that

5    bring us here today.  It also supplies information that I am

6    required to consider at sentencing under federal law before

7    imposing sentence.

8        Next, while the sentencing guidelines are no longer

9    binding on the Court, I'm still required to rule on and

10   determine the correct guideline range.  That process will

11   likely involve some discussion with counsel, after which I

12   will hear from them to get their views on the appropriate

13   sentence.  You will then have the opportunity to address me

14   directly and tell the Court anything you would like to have

15   considered.

16       Then I will review the sentencing factors I mentioned

17   a moment ago, I'll state how they influence my decision in

18   the case, and then announce the sentence.

19       Generally do you understand how we will proceed today?

20               THE DEFENDANT:  Yes.

21               THE COURT:  As always, if you need to speak

22   with your attorney or if you have any questions at any time,

23   I'm happy to give you the opportunity to speak with

24   Mr. McCaffrey.  If you need that time, if you need to speak

25   with him, will you let me know?

1              THE DEFENDANT:  Okay.

2              THE COURT:  So the Court ordered a presentence

3      investigation and report.

4          Counsel, I just want to confirm for the record that

5      that was previously provided to you.

6              MR. MORRISON:  Yes, Your Honor.

7              MR. MCCAFFREY:  Yes, Your Honor.

8              THE COURT:  And, Mr. McCaffrey, have you had

9      the opportunity to review the presentence report with

10     Ms. Smirnova?

11             MR. MCCAFFREY:  I have, Your Honor.  I've

12     reviewed various iterations of it, yes.

13             THE COURT:  Ms. Smirnova, have you had the

14     opportunity to read the presentence investigation and

15     report?

16             THE DEFENDANT:  Yes, I have read it.

17             THE COURT:  Did you have enough time to review

18     the report with your lawyer?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you satisfied with the

21     representation you have received from your lawyer,

22     Mr. McCaffrey?

23             THE DEFENDANT:  Yes.

24             THE COURT:  I have reviewed the presentence

25     investigation and report.  In addition, I have reviewed the

1    defendant's sentencing memorandum as well as the letters of

2    support from Ms. Smirnova's friends and family.  I believe

3    there were six of them that were attached as exhibits; I've

4    reviewed each of those.

5         Are there other documents or information that I may

6    have overlooked or may be missing that I need to review

7    before we proceed?

8                   MR. MCCAFFREY:  Not on behalf of the defense.

9                   MR. MORRISON:  Your Honor, we're just going to

10   be referring to some of the trial exhibits that were

11   obviously much discussed previously and of course provided

12   to Mr. McCaffrey well before the trial.

13        And I think our reference to the PSR, I don't think

14   there's going to be any surprises, but essentially the

15   recordings at issue.

16                   THE COURT:  I will note as well -- I almost

17   said there's some issues -- other sentencing, some

18   post-trial motions involving other defendants that I'm

19   working through.  So I have been reviewing some of those

20   materials but wasn't sure how relevant they would be, and I

21   guess I'll find out.  So I am remaining familiar with the

22   trial record beyond what I've specifically reviewed for the

23   sentencing today.

24        Turning to the presentence report then, timely

25   objections were made.  Most, as I understand it, have

1    already been dealt with and resolved.  By my count, there's

2    one objection from the United States to deal with and two

3    from the defendant.

4         So what I would like to do is to start with the

5    objection from the United States, which I believe goes to

6    the base offense level.  I have reviewed the addendum to the

7    presentence report on that issue, but I'm happy to hear from

8    the United States to the extent you wish to speak further to

9    it.

10                   MR. MORRISON:  I mean, I think that the long

11   and the short of it is that our statement in the PSR

12   reflects our position pretty fully.  There is not a huge

13   amount of case law on this, candidly.  Well, I'm not going

14   to pretend that there is.  I think often that's because

15   these are -- as it is here -- worked out by plea agreement,

16   and so there's seldom reason for these things to be hotly

17   contested.

18        At base, I understand Probation's position.  I

19   understand that the offense of conviction is 371 and that

20   has a maximum of five years, there is no dispute there.  And

21   were a 371 the way by which we were -- referenced at 2B1.1,

22   it would clearly be a base offense level of 6, but here we

23   get to 2B1.1 through 2X1.1.  And the terms of 2X1.1 are, to

24   my mind, quite clear; that is it says to use the base

25   offense level and the substantive offense level that would

1       apply for the substantive offense or the object offense of

2       the conspiracy.

3           Here -- so I think when you read 2B1.1, it has to be

4       through that lens of 2X1.1.  Candidly, I have seen it done

5       both ways, but by far, the majority of the ways in which

6       I've seen this handled is for it to be a base offense level

7       of 7.  That includes, for example, some of the defendants

8       who were here before you testifying in the trial including

9       Mr. Graham and Mr. Collins, I believe.  And so those -- this

10      is not a unique perspective I guess that we're taking here.

11          And I think it's true that it often comes up where

12      somebody has been convicted of both the substantive offense

13      and the conspiracy such that the result, you know, that

14      doesn't fully tell you the result as in the cases that we

15      provided to Probation, but I think --

16                  THE COURT:  I think in that case it would be

17      pretty clear that it's a 7.

18                  MR. MORRISON:  Right.

19          And -- yeah, in which case this exact question doesn't

20      necessarily arise, and I acknowledge that.  And so I don't

21      want to over-rely on these cases of it having driven exactly

22      to the issue, and I really appreciate the work that

23      Probation has done to work through this complicated issue,

24      and I understand they have consulted with the Sentencing

25      Commission.  All I know is that part of the reason we got to

1     a base offense level here is through previous consultations

2     with the Sentencing Commission, so it's my understanding

3     their position may have changed on this.

4           But, at bottom, we simply think that in addition to

5     what the plea agreement says, which is not binding in any

6     way on the Court, it's that 2X1.1 is quite explicit and

7     clear to use the base offense level and substantive offense

8     characteristics for that object offense, which here I don't

9     think there's any dispute has a 20-year maximum, and so the

10    text and comments of 2B1.1 need to be read in that context.

11                    THE COURT:  Did you wish to speak on that

12    issue, Mr. McCaffrey?

13                    MR. MCCAFFREY:  Very briefly, Your Honor.

14          When we were negotiating the plea agreement -- I'm

15    sure the Court can appreciate; it was literally on the eve

16    of the start of the trial -- I took the position that the

17    base offense level should be a 6.  Mr. Morrison took the

18    position it should be a 7.  At that time I didn't feel the

19    need to spend a lot of the capital -- what little capital or

20    leverage I had on that particular issue because there were

21    more pressing issues.

22          So I agree the plea agreement does say 7, but --

23    that's our position.  Thank you.

24                    THE COURT:  So I did spend a fair amount of

25    time on this issue.  I did not consult the Sentencing

1    Commission.  I should probably add that to my arsenal of

2    moves to make in these matters; it would probably save me

3    some time.  But I did not do that, for better or for worse.

4    But here's how I see this dispute.

5         So, again, we're focused on the first inquiry here for

6    purposes of sentencing, which is just correctly calculating

7    the guideline range.  That's all we're doing at the moment.

8         The issue at hand is whether the base offense level is

9    6, as set forth in the guideline calculation recommended in

10   the presentence report, or 7, as the United States contends.

11        Section 2X1.1(a) of the guidelines provides that the

12   base offense level for a conspiracy charge -- I should say

13   provides the base offense level for a conspiracy charge.  It

14   directs use of the base offense level from the guideline for

15   the substantive offense plus any adjustments and so on.

16        Application Note 2 provides that the term "substantive

17   offense" means the offense that the defendant was convicted

18   of soliciting, attempting, or conspiring to commit.  In

19   terms of the base offense level, the application note states

20   that the base offense level will be the same as that for the

21   substantive offense.

22        Here, Count 2 of the second superseding indictment

23   charges a conspiracy to commit securities fraud.  Securities

24   fraud carries a maximum statutory term of imprisonment of 20

25   years under Section 2B1.1A.

1          For a base offense level of 7 to apply, two

2     requirements must be met.  The second of those two

3     requirements is that the offense of conviction has a

4     statutory maximum term of imprisonment of 20 years or more.

5          Although a conviction for conspiracy under Section 371

6     carries a maximum of five years, Section 2X1.1 directs use

7     of the substantive offense in place of the conspiracy

8     offense.  And securities fraud meets this requirement

9     because of its maximum penalty of 20 years.

10          The other requirement then is that the defendant be

11     convicted of an offense referenced to this guideline.

12     Conspiracy is referenced to Section 2X1.1, but again, that

13     guideline directs use of the substantive offense in place of

14     the conspiracy charge for purposes of determining the base

15     offense level.  And securities fraud is referenced as

16     Section 2B1.1.

17          I will go out on a limb and purport to speak for

18     everybody in the courtroom at the moment and say that this

19     guideline -- like some others -- but this guideline can

20     certainly be written more clearly or better.  Ironically, I

21     think one of the risks of the guideline, the way it's

22     written, is that it might create disparities between a

23     defendant like Ms. Smirnova who pled guilty to conspiracy to

24     commit securities fraud and some co-defendants in this case

25     who pled guilty to conspiracy in addition to the substantive

1    offense.

2         Of course the guidelines were enacted in the first

3    place to minimize unwarranted sentencing disparities.  And

4    that's one factor that causes me to read -- using all the

5    normal tools of statutory interpretation -- the

6    cross-references of just substituting in the substantive

7    offense for the base offense level; and I do sustain the

8    objection for that reason, determine that the base offense

9    level is 7.  Again, that's not to say that there's not

10   unequivocal doubt on the matter or, you know, reasonable

11   contrary constructions and so forth, but I think that's the

12   best reading of the guideline as I see it.

13        And I believe there is two objections from Defendant

14   at this point.  I think the first objects to paragraphs 18,

15   34, and 40.  I think technically these are objections 2 and

16   3, but it's the first remaining objection.  Primarily, the

17   argument on these paragraphs is that they relate to conduct

18   charged in Count 1, though Ms. Smirnova only pled guilty to

19   Count 2.

20        Do I have that more or less right, and did you want

21   to --

22                  MR. MCCAFFREY:  That's correct.

23                  THE COURT:  And did you want to speak to that

24   further?

25                  MR. MCCAFFREY:  That's correct, Your Honor.

1        There was no plea to Count 1.  And, in fact, the conduct

2        outlined in the plea agreement makes no reference whatsoever

3        to Count 1, and that was not by an oversight or mistake.

4                    THE COURT:  And did the United States wish to

5        speak to this first objection?

6                    MR. MORRISON:  I don't think there's any

7        dispute between the parties that she's not been convicted of

8        Count 1 and we've agreed to dismiss Count 1.  We are not

9        asserting that Count 1 is relevant conduct.  I think

10       Probation may have a different view and is entitled to

11       express that in the report, but we, standing by the plea

12       agreement, would ask that Count 1 conduct not be treated as

13       part of the relevant conduct here.

14            But as I understand it, at least as it relates to some

15       of the paragraphs at issue here, these are sort of

16       statements of collective action that some of that action

17       is -- includes actions she did take as part of her Count 2

18       conduct.  So we have no -- we agree that the events of

19       Count 1 shouldn't be considered as relevant conduct here,

20       that's what we'd ask the Court to do pursuant to the plea

21       agreement.  But we do think that it is the case that she

22       used fraudulent consulting agreements, for example, that

23       that is part of what was envisioned and actually done as

24       part of the Count 2 conduct.

25                    THE COURT:  So when I read the three

1    paragraphs specifically at issue, I had some slight

2    wordsmithing that might solve the problem, but,

3    Mr. McCaffrey, you might tell me that it doesn't solve the

4    problem.  So I'll just give you one of them, and we can talk

5    about it because I think you'll see how it carries through

6    to the others.

7         But looking at paragraph 18, paragraph 18 reads:

8    "Ms. Smirnova assisted in the making of" -- this is my fault

9    here.  I've marked up my document, so I'm hopelessly out of

10   sorts here.

11        So it says -- the second sentence -- I guess it's the

12   second-to-last sentence -- "Smirnova assisted in the payment

13   of fraudulent kickbacks to unregistered brokers for

14   soliciting investors."

15        I think that's the primary sentence that's of concern

16   in your objection.  My proposal -- or I wonder if rewriting

17   that sentence slightly to say "Ms. Smirnova assisted in

18   making payments to unregistered brokers for soliciting

19   investments" doesn't address that concern.  You can tell me

20   it doesn't.  I thought it might, though.

21                  (Pause in proceedings.)

22                  MR. MCCAFFREY:  Could you read that again,

23   Your Honor?

24                  THE COURT:  Yeah.

25        So I'm looking at the second-to-last sentence of

1    paragraph 18.  I think that's the sentence where the

2    objection that you're raising really takes aim.  And so what

3    I was thinking was that -- to just have it say:

4    "Ms. Smirnova assisted in making payments to unregistered

5    brokers for soliciting investors."

6              MR. MCCAFFREY:  That would be factual.

7              THE COURT:  And I would carry that through in

8    34 and 40 because I think that addresses the Count 1,

9    Count 2 distinction that you're getting at.

10        And any different view of that from the United States?

11             MR. MORRISON:  I don't have any issue with

12   that, Your Honor.

13             THE COURT:  So with that, I think -- so

14   paragraph 18 would -- just so we have it straight -- would

15   say:  "Smirnova assisted in making payments to unregistered

16   brokers for soliciting investors."

17        In paragraph 34 then, the same sort of change would be

18   on the back half of that paragraph:  "Paul Spivak, Olga

19   Smirnova, and others utilized fraudulent consulting

20   agreements and invoices to conceal payments to unregistered

21   brokers."

22             MR. MORRISON:  Your Honor, I wonder -- I mean,

23   I think this paragraph 34 is generally speaking a truthful

24   statement as to what was going on in Count 2.  I wonder if

25   it's maybe just paid to an unregistered broker because in

1    Count 2 it's just the singular person that she's primarily

2    dealing with there.

3                    THE COURT:  To conceal payments to an

4    unregistered broker?

5                    MR. MORRISON:  Correct.

6                    THE COURT:  I think that's right.

7                    MR. MCCAFFREY:  Yeah.  I don't -- our problem

8    with that is the kickback.  It was --

9                    THE COURT:  What I have is "consulting

10   agreements and invoices to conceal payments to an

11   unregistered broker."

12                   MR. MCCAFFREY:  Yeah.

13                   THE COURT:  And then paragraph 40 would say:

14   "Undisclosed commissions and sums to co-conspirators who

15   helped facilitate the sales of USLG shares."

16                   MR. MCCAFFREY:  (Indicating.)

17                   THE COURT:  I think those slight edits capture

18   the objection, unless I'm missing --

19                   MR. MCCAFFREY:  I think that's right, Your

20   Honor.  Thank you.

21                   MR. MORRISON:  I don't have any problem with

22   that, Your Honor.

23                   THE COURT:  All right.

24        Then the other objection is Defendant's objection to

25   the two-level enhancement for sophisticated means under

1    Section 2B1.1(b)(10)(C).  Again, I've reviewed the basis for

2    the objection.

3         And, Mr. McCaffrey, I'm happy to have you speak

4    further to it, if you wanted to do so.

5                   MR. MCCAFFREY:  Thank you, Your Honor.

6         Allow me one moment.

7         Your Honor, may I remain seated?

8                   THE COURT:  Yes.

9                   MR. MCCAFFREY:  Okay.

10        Your Honor, we have set forth our position in a letter

11   to the U.S. Probation office, which was incorporated into

12   the presentence investigation report and then also in our

13   sentencing memorandum, and this particular enhancement is

14   very clear that it requires an examination of not only

15   the -- the defendant's specific conduct in order to

16   determine whether or not that particular defendant utilized

17   sophisticated means.

18        And Guideline Application Note 2 specifically

19   references certain such conduct such as hiding assets or

20   transactions, use of fictitious entities, corporate shells.

21   It gives some examples of that.

22        The government did not provide any explanation as to

23   what their position is with respect to sophisticated means,

24   so I'm addressing at this point only the response made by

25   the probation office, and their argument, Your Honor, is --

1    if I understand it correctly -- is they're looking back at

2    conduct -- not the conduct that was referenced in Count 2,

3    which there are only two incidents in the plea agreement

4    that are referred to.  And if I could speak for a minute

5    about those two instances.

6        The plea agreement deals with conduct that occurred at

7    a March 5th, 2021, meeting at US Lighting Group, that's a

8    very long consensually recorded tape involving an undercover

9    FBI agent as well as the cooperating witness.  There was a

10   tour of the US Lighting Group office and facilities, of

11   which Ms. Smirnova was not a part.

12       There was a meeting -- a very long meeting in a

13   conference room that was attended by a number of people.

14   Mr. Spivak, Ms. Smirnova, we believe Steve Eisenberg, the

15   CFO, and also Maria Daniels, the investment relations

16   officer, in addition to the two government agents.  And in

17   that recording, it's very clear that Ms. Smirnova is in and

18   out of the room.

19       We've made reference in our sentencing memorandum that

20   she had a young daughter at that time and she was caring for

21   her young daughter.  I think the Court is aware of some --

22   possibly some testimony where the daughter was brought to

23   the office when Ms. Smirnova would be in the office, and so

24   she was going out to attend to her daughter.  And there's --

25   I mean, she's basically just present when she's asked at

1    some point by Paul Spivak to go out and get the financial

2    statement.  She brings it back in, she doesn't know what

3    he's going to do with it, and then he goes on for pages and

4    pages and pages talking about that.

5         The other conversation that is referenced in the plea

6    agreement relates to a June 2nd, 2021, recorded

7    communication, and that was a communication that occurred in

8    a motor vehicle.  Mr. Spivak is in front with the

9    cooperating witness, and Ms. Smirnova is in the backseat

10   with her daughter.  And the conversation is mainly between

11   the undercover and -- I'm sorry -- the cooperating witness

12   and Mr. Spivak.  And Ms. Smirnova is occasionally asked to

13   respond.  That's where she mentions in order to conceal the

14   payment that is going to be made to the cooperating witness

15   so that the CFO does not learn of that, she mentions, you

16   know, consulting agreements.  And it's our position, Your

17   Honor, that the -- Ms. Smirnova's involvement in Count 2

18   with respect to the consulting agreement in the activity

19   that's at issue in Count 2 does not rise to the level of

20   sophisticated means.

21        The probation officer's argument, as I understand it,

22   is she's referring back -- she wants to refer back to

23   Count 1 conduct and also that -- she makes the statement,

24   quote, "If the conduct in the count of conviction" -- that

25   is Count 2 -- "in this case had not involved an undercover

1    operation, it seems reasonable to believe that her

2    involvement in the concealment would have continued," end of

3    quote.

4        I'm not aware -- I don't see any case citation or any

5    sort of application note that supports that -- that kind of

6    speculation in the instance of an undercover operation.

7        So, for those reasons, I don't believe that that's

8    supportive of the sophisticated means enhancement.

9        Thank you.

10            THE COURT:  Did you want to speak to the

11   objection, Mr. Morrison?

12            MR. MORRISON:  Yes, Your Honor.

13       So I think we have kind of a -- there's some dispute

14   about the facts, but I think there's also an initial dispute

15   about the law of this.  I think Mr. McCaffrey understands

16   why -- in reviewing the case that he cited in his sentencing

17   memo -- the focus is on the defendant's conduct, the

18   defendant's conduct.  And it is true that you do

19   particularize as to each individual defendant.  That is not

20   the same thing as saying that you can only look at the

21   specific actions of the specific defendant in jointly

22   undertaking criminal activity.

23       The specific offense characteristic here is whether

24   the offense involved sophisticated means.  And for that,

25   whether the offense involved it, you then look at the

1     definition of relevant conduct in 1B1.3, which says you are

2     to use the definition of relevant conduct for all specific

3     offense characteristics.  When you read these two provisions

4     together, you do have to particularize Ms. Smirnova's

5     participation in this conspiracy against her husband's or

6     others, so we're not trying to hold Ms. Smirnova responsible

7     for every single thing her husband did.  That being said,

8     the fact that he did X while she was present and supporting

9     him doesn't mean that X is his only and his alone.  It's

10    jointly undertaken criminal activity.

11         And so we think that it's important to bear in mind

12    the definition of relevant conduct for a conspiracy

13    especially but as specifically concerns this specific

14    offense characteristic.  So that's the kind of I think

15    different legal starting place that we have in our analysis

16    of this offense characteristic.

17         Then when you take a step back and sort of apply that

18    to the specific conduct at issue, we also think there are

19    some differences in the conduct.  So the first would be that

20    just because it's not spelled out in the plea agreement,

21    doesn't mean it is not part of her relevant conduct.

22         Now, I do not mean to suggest that we are seeking to

23    hold Count 1 activities against her for these purposes and

24    not for others.  We're not suggesting Count 1 is relevant

25    conduct, but Count 2 is more than the sum total of the

1    statements in her plea agreement.  And so, for example,

2    Government's Exhibit 425 is an earlier recording from

3    February of 2021 in which there is an explicit discussion

4    between Ms. Smirnova, Mr. Dean, and Mr. Spivak about getting

5    stock prices up.

6         And I think that it's stipulated in the plea agreement

7    that she understands part of the conspiracy is that they're

8    trying to inflate the stock price, so I don't think that's

9    disputed, but I do think it's important to note that there's

10   discussion in that recording of inflating the stock price

11   and, for example, Mr. Dean explaining that Canadians have an

12   easier time with the offshore accounts.  They're talking

13   about getting a 40 cent bump through another project

14   followed by Mr. Dean bragging that his guy, Brian, will get

15   the stock to a dollar.  "A buck" he says.

16        And it's not as though Ms. Smirnova is merely in the

17   background, she's participating.  She's saying "wow" when

18   they say it jumps to 40 cents.  When they're discussing who

19   their investor base is, she's providing detailed

20   information.  You know, not institutional investors,

21   individual investors.  And throughout this, then they turn

22   to talking about Mr. Mallion as a professional

23   pump-and-dumper who had been assisting them.

24        So -- and that is not -- we're not saying that's

25   sophisticated means, to be clear.  We only want to say that

1     this is a long-running set of conduct, and that before you

2     get to that March conduct, she's clued into this overall

3     purpose of pumping up the price.

4          And the March conduct -- I'm not saying it's

5     sophisticated means to follow her husband's instructions to

6     show early financials, but I do think -- the key thing

7     that's in the very case I think Mr. McCaffrey's citing, the

8     common refrain of the Sixth Circuit on sophisticated means

9     is that you don't just tick off each individual instance of

10    conduct and say "This wasn't sophisticated, this wasn't

11    sophisticated, this wasn't sophisticated," you look at the

12    totality of the conduct, you put all of the pieces of the

13    puzzle together.

14         And so our position here is that we are accumulating

15    pieces of this puzzle as we go, and that by the time you get

16    to the main exhibit here, which is Government's Exhibit 453,

17    that's the longer recording that was referred to where they

18    have the drive in the car.  In the course of that recording,

19    it's true that she is dealing with her daughter, but it's

20    also true again that she's not just doing that, that she is

21    listening and trying to listen; and when she doesn't listen,

22    as I think you recall from the trial, her husband castigates

23    her for not listening closely enough.

24         And so, in fact, that whole -- the main excerpt of

25    that recording, Government's 453A, begins with Ms. Smirnova

1   being the one to initiate the question to Mr. Dean about

2   "How did you do that?  What was your background?"

3   essentially.  And they begin to get into this discussion

4   placing Maria, the investor relations person, with who

5   Mr. Dean describes as animals, absolutely bulldogs; and the

6   idea is that they're going to bring in one of his,

7   quote/unquote, "animals" to be the investor relations person

8   to be pumping up the stock directly to the investors.  And

9   there's an extended discussion involving Ms. Smirnova

10  repeatedly about having this employee be on the inside of

11  the company because that's what keeps them safe.  They could

12  get in trouble if it's somebody on the outside.

13          And they talk about the trouble being to get one of

14  these guys to move from, you know, San Diego or Miami to

15  Cleveland, that they can't get someone to work full time in

16  Cleveland.  Which we're happy to not have full-time

17  fraudsters here; we have a hard enough problem with

18  part-time fraudsters.

19                  THE COURT:  I don't know why today no one

20  would want to move from San Diego to Cleveland.

21                  MR. MORRISON:  On a day like today.

22                  THE COURT:  It's a mystery.

23                  MR. MORRISON:  Yes.

24          And she even chimes in at some point "But they're not

25  team players, you have to leave them alone," right?  She

1    knows that even though they're going to bring them in, they

2    have to be kind of left to their own devices.  You can't be

3    supervising them too closely.  But she maintains there's

4    nothing wrong with them working for US Lighting Group.  And

5    that's how that first excerpt actually ends.

6         So then when you turn to the second excerpt, 453B,

7    that's when it gets into the explicit discussion of the use

8    of a foreign shell corporation to receive these consulting

9    payments.  And to be clear, she's not as intimately involved

10   in that, but she is piping in from time to time.  And as I

11   referenced earlier, she is then brought in on the specifics

12   and mechanics of how to do it, castigated for not listening

13   closely enough, and reminded "No, no, no, this is a foreign

14   corporation here, so it's not going to have a regular

15   U.S. tax ID."

16        And so at that point she's intimately involved.  And

17   even if the -- you know, some statements that are more

18   sophisticated are Mr. Spivak's and some statements that are

19   more sophisticated are hers, all of those statements,

20   because it's part of their jointly undertaken criminal

21   activity, are part of what makes this offense involve

22   sophisticated means from the perspective of her as a

23   defendant in her relevant conduct.

24        So we don't mean to suggest that she's the leader

25   here.  We don't mean to suggest that everything was at her

1    specific direction.  And, indeed, she's often following the

2    direction of her husband, but that doesn't mean that she

3    isn't jointly responsible for those sophisticated steps,

4    which specifically include the exact example provided in the

5    guidelines commentary, which is concealing transactions

6    through the use of shell corporations.

7         And then it also mentions offshore accounts.  And so

8    we don't specifically discuss offshore accounts here, but

9    it's an offshore shell corporation, which we think makes it

10   that much more sophisticated.  And so the fact that she

11   isn't the one to suggest it we don't think is legally

12   significant, and we do think she is heavily involved in this

13   discussion, and that that's meaningful, and that should be

14   counted against her.

15        And I will remind the Court, as the Court heard during

16   trial, that throughout this process Mr. Spivak ends one of

17   these excerpts by saying that we're hiding this from all

18   these people, there can be no mathematical formula.  And he

19   says the only ones who will know the real answer is sitting

20   in that car right now.  Not in the front seat, in the car.

21                  THE COURT:  I mean, to what extent under that

22   argument is the enhancement going to apply in every

23   securities fraud case, though?

24                  MR. MORRISON:  From the perspective of the use

25   of shell corporations?

1          THE COURT:  Or sophisticated means, more

2     generally.  I mean, the shell corporation use you're

3     pointing to would be particular to this particular

4     conspiracy.  But in the next conspiracy or the one after

5     that, it's going to be a slightly different means.  But

6     there's almost always, it seems to me, going to be

7     sophisticated means under that approach you're outlining.

8          MR. MORRISON:  Well, I think some crimes are

9     more likely to involve sophisticated means than others,

10    right?  Not every crime under 2B1.1 is going to follow the

11    pattern of an elaborate securities fraud scheme, but it does

12    so happen that most securities fraud schemes that make their

13    way into federal court are fairly elaborate, as this one

14    was.

15         So I don't think the fact that, for example, the

16    government focuses on prosecuting particularly complex

17    securities fraud schemes means that somehow because we have

18    sort of lopped off the bottom half of things, because the

19    rest of them are similar in this respect, they're not

20    sophisticated.  The point is that we're going after these

21    precisely because they are sophisticated including in this

22    way, right?  That's the type of thefts that tend to deceive

23    investors that they can't discover on their own, that they

24    have a harder time remedying through civil process, and that

25    are not discovered, for example, by the SEC, which here,

1       again, I've only got into one small piece of this and was

2       frankly overwhelmed by the rest of it.

3           And so I think that the sophistication here, just

4       because it might recur, doesn't mean it's not still

5       sophisticated, it's within the black letter of the common --

6       of a classic example of sophisticated means.  And so I do

7       think it may be relatively more common in securities fraud

8       schemes, but it's certainly not the norm for every fraud,

9       even if it was done here, and that it remains sophisticated.

10                      (Pause in proceedings.)

11                      THE COURT:  Mr. McCaffrey, did you want to

12      respond?

13                      MR. MCCAFFREY:  I did briefly, Your Honor.

14          First, Your Honor, the government made no response to

15      the objection, so I -- you know, this is the first time I'm

16      hearing these arguments.  It could have easily been

17      responded to and included prior to this proceeding.

18          Second, I think that much of the conduct that

19      Mr. Morrison has referred to is the type of evidence that

20      was -- that demonstrated Ms. Smirnova's involvement in the

21      conspiracy.  And I think the Court has put its finger

22      exactly on the issue, which is what specific conduct was

23      this defendant involved in that involved sophisticated

24      means?  And the best that they've come up with -- at least

25      as I can see in the plea agreement -- is the use of a

1      consulting agreement.  And even that was not sufficient

2      because it was a use of a consulting agreement just as a

3      means of concealing from the CFO the fact that $50,000 was

4      going to be paid to this cooperating witness.

5          So -- and there were -- there were no offshore

6      corporations involved with US Lighting Group, Your Honor.

7      So, you know, again, if -- if you listen to these tapes,

8      90-plus percent -- more than that -- 98-plus percent of the

9      discussion is all Mr. Spivak and the cooperating witness

10     going back and forth and speaking between each other, and

11     from time to time Ms. Smirnova is weighing in.

12         So I don't -- I think the Court is exactly right,

13     that -- where do you draw the line in securities fraud cases

14     where the sophisticated means enhancement would not apply in

15     every instance?  And I think this is a perfect example of

16     going way too far with the use of this enhancement.

17         Thank you.

18              MR. MORRISON:  Your Honor, may I respond very

19     briefly?

20              THE COURT:  Sure.

21              MR. MORRISON:  Just the statement "This is

22     just to hide it from Steve, the CFO" just isn't quite

23     correct.  They're also seeking to hide it from the

24     investors, right?  And there's an extended discussion in

25     which Ms. Smirnova contributes her expertise, that they're

1    going to have to put in the filings every share that's

2    issued, and they come up with this plan, they're going to

3    issue it in the aggregate, and that that way it won't be

4    seen, it won't be known who they're issuing it to.

5         And there's this discussion of, well, yeah, if they

6    saw it being issued directly to the -- you know, the name of

7    the guy they know, that would be a problem.  And so the --

8    again, she's -- of course as the Court has -- well familiar,

9    she doesn't talk as much as her husband.  That is not an

10   exemption from the sophisticated means enhancement.  She's

11   intimately involved in this discussion and contributing to

12   the planning of this concealment process.

13                  MR. MCCAFFREY:  May I respond, Your Honor?

14                  THE COURT:  Briefly.

15                  MR. MCCAFFREY:  Because the specific context

16   in which she mentions the consulting agreement relates to

17   how is it that Steve is not going to find out about that.

18   That's the -- that's the specific context.

19                  THE COURT:  With respect to this objection,

20   the sophisticated means enhancement in

21   Section 2.1.1(b)(10)(C) provides as follows.

22        Quote:  "If A, the defendant relocated or participated

23   in relocating a fraudulent scheme to another jurisdiction to

24   evade law enforcement or regulatory officials;

25        "B, a substantial part of a fraudulent scheme was

1    committed from outside the United States;

2         "Or C, the offense otherwise involved sophisticated

3    means, and the defendant intentionally engaged in or caused

4    the conduct constituting sophisticated means, increase by

5    two levels."

6         Under basic principles of statutory interpretation,

7    the third prong -- which is the one that's at issue here --

8    derives its meaning from the company it keeps by reference

9    to the type of conduct described in subparagraphs A and B,

10   such that the sophisticated means enhancement is not a

11   general all-encompassing enhancement that applies to any

12   scheme otherwise involving sophisticated means.  On the face

13   of the guideline, the sophisticated means at issue must be

14   of a particular type.

15        The application notes reinforce this reading of the

16   text of the Guideline Application Note 9(b) provides, quote:

17        "For purposes of (b)(10)(C) 'sophisticated means'

18   means especially complex or especially intricate offense

19   conduct pertaining to the execution or concealment of an

20   offense.  For example, in a telemarketing scheme, locating

21   the main office of the scheme in one jurisdiction but

22   locating soliciting operations in another jurisdiction

23   ordinarily indicates sophisticated means.  Conduct such as

24   hiding assets or transactions or both through the use of

25   fictitious entities, corporate shells, or offshore financial

1    accounts also ordinarily indicates sophisticated means.

2         "These examples reinforce the meaning of sophisticated

3    means for purposes of the enhancement as requiring efforts

4    to conceal an offense, and those efforts must be especially

5    complex or involve especially intricate conduct.  That is,

6    it must go beyond the level of sophistication necessary

7    ordinarily to commit the offense at issue."

8         Here, the record pertaining to Count 2 as it involves

9    Ms. Smirnova has some indicia of such conduct.  Mr. Morrison

10   spoke to that.  But the Court need not decide on which side

11   of the line that conduct falls because the guideline

12   following the 2015 amendment requires a defendant's

13   participation in that sophisticated means.

14        In that regard, Ms. Smirnova was certainly aware of

15   the sophisticated means involved in the offense.  She

16   engaged in or caused the conduct constituting sophisticated

17   means, as Mr. Morrison points out, by suggesting it.  But

18   the means at issue, at least as Ms. Smirnova suggested or

19   was involved, were not especially sophisticated or

20   sophisticated beyond the normal means used to commit

21   securities fraud or execute a scheme to defraud.  That's not

22   to make any conclusions about how that enhancement will or

23   will not apply to any other defendant; it's only to apply it

24   on the specific facts in Count 2 as they relate to

25   Ms. Smirnova and her involvement in Count 2.

1        In short, on the record in this case, there's less to

2    Ms. Smirnova's participation in concealment of the offense

3    than meets the eye.  It does not, in my view, rise to the

4    level of supporting application of the enhancement, and,

5    therefore, I'll sustain that objection.

6        Mr. Morrison, does the government have any reason to

7    believe that Ms. Morrison -- I'm sorry -- that

8    Ms. Smirnova -- I apologize -- has not clearly accepted

9    responsibility within the meanings of the guidelines?

10           MR. MORRISON:  Your Honor, I would say her

11   acceptance statement is certainly not the full-throated one

12   that we would have hoped to have seen.  I will say that she

13   has acknowledged other criminal conduct, however, in her

14   guilty plea, and on that basis -- in that -- and on that

15   basis, we do believe she's entitled to acceptance of

16   responsibility.

17           THE COURT:  Thank you.

18        The record reflects that Ms. Smirnova has accepted

19   responsibility and, therefore, the Court will give her the

20   two-point reduction under Section 3E1.1(a).

21        In doing so, I note that the guideline calculation

22   recommend and anticipated that she would receive that

23   reduction.

24        Strictly with respect to calculation of the correct

25   guideline range, are there other issues we should address at

1     this point?

2                         MR. MORRISON:  Not from the government, Your

3     Honor.

4                         MR. MCCAFFREY:  Not from the defense.  Thank

5     you.

6                         THE COURT:  So then by my calculation, subject

7     to the parties' objections, which as far as I'm concerned

8     are raised and preserved for the record, I calculate a total

9     offense level of 9, which with a criminal history category

10    of I yields a guideline range of 4 to 10 months in Zone B.

11         Does anyone have a different calculation, again,

12    subject to all of your respective objections?

13                        MR. MORRISON:  No dispute there, Your Honor.

14                        MR. MCCAFFREY:  No objection, Your Honor.

15                        THE COURT:  Except as I have ruled regarding

16    the objections, the Court adopts the presentence report as

17    its own findings in this matter.

18         Counsel, at this time I'm prepared to hear from you to

19    get your views on the appropriate sentence.

20         Mr. Morrison, on behalf of the United States, you may

21    proceed when you are ready.

22                        MR. MORRISON:  Thank you, Your Honor.

23         You know, I think we've kind of covered actually a lot

24    of what I would emphasize about the facts of the offense.  I

25    mean, I think the bottom line here -- when I say that, I

1    mean as to aggravating circumstances.  I think the defendant

2    had some sophistication, whether -- let's put it that way,

3    right?  She is an intelligent woman, and she put her

4    intelligence to the wrong use here.

5         She did so in a way that was calculated and -- you

6    know, here it did not in the end, but that was calculated to

7    harm the investing public.  And she was aware of the larger

8    plan, she actively participated in it regularly, and not

9    just in one phone call but over the course of repeated

10   meetings.  This was not a momentary lapse of judgment.  And

11   so we think those are aggravating circumstances.

12        I would acknowledge there is a mitigating circumstance

13   here to some degree, which is that I think that the

14   defendant's husband was -- how do I put this -- he did not

15   make her do what she did, but he was, as you could hear on

16   these calls, forceful, unpleasant, and bullying with her and

17   pretty much everyone around him.  And I do think that -- you

18   know, we have -- you know, in weighing the positive and

19   negatives, I do think it's worth noting that she wasn't

20   coming up with the vast majority of this scheme.  And we

21   acknowledge that.

22        We acknowledge also that she was married to this

23   person, and that would make it a little complicated for her

24   to push back as she should have.  That's not to say that it

25   excuses it, but it is to acknowledge the realities of how

1    difficult that might be with someone she's in a long-term

2    relationship with and has a child with.  So I just want to

3    be clear that we don't trivialize those concerns that I'm

4    sure the defense is going to talk about more.

5         And so placing those things in context, we think a

6    sentence of probation that includes as a special condition

7    home detention for a period of ten months would be

8    appropriate here.  That's within the guidelines range that's

9    contemplated and lower than what the government was seeking

10   under the plea agreement, that that includes a real sanction

11   but one that acknowledges some of these mitigating

12   circumstances as it applies to this particular defendant in

13   this particular scheme.

14        That's in no way to excuse the overall course of

15   conduct here and certainly not to say that the same is true

16   of everyone else who participated in this scheme, but I

17   think that it's important for the government in

18   circumstances like these to recognize that a person is

19   defined by more than just the worst mistakes that they have

20   made, and particularly when those mistakes are made in the

21   context of a marriage in which one shares a child, and we

22   recognize that here.  And for that reason we would not

23   oppose a noncustodial sentence.

24                  THE COURT:  Thank you.

25        Mr. McCaffrey, you may proceed when you're ready.

1          MR. MCCAFFREY:  Yes.  Thank you, Your Honor.

2     I'll be very brief.

3          I appreciate the Court's attention today and also the

4     fact that the Court spent the time reviewing the sentencing

5     memorandum.  And it's not my intention to repeat many of the

6     points that was made in the memorandum or in the presentence

7     investigation report.

8          Your Honor, from my very first involvement in meeting

9     with Ms. Smirnova way back in 2021, I can tell you that she

10    has always put her daughter first.  Before her husband,

11    before the company she worked for, even before herself.

12    That has always been the most important thing to her.  She

13    certainly did not want her daughter to experience the type

14    of childhood that she experienced growing up in Russia.

15          I would note Mr. Elliot has talked about Mr. Spivak.

16    There's a 20-year age difference between those two, and I

17    think there's also a lasting gratitude for him taking her

18    out of that corrupt former Soviet Union, especially when she

19    had no other -- she had lost her father at that point and

20    had no other family other than a mother and a sister, her

21    sister lived in Israel.

22          Ms. Smirnova gave birth to her daughter in 2018 and

23    was -- took leave for most of 2019 and came back basically

24    part time after that, Your Honor, and during the time period

25    at issue in Count 2, 2021, she was essentially working part

1    time and trying to be a full-time mom also.

2         She did what she was asked to do to help US Lighting

3    Group, this growing business.  As is pointed out, yes, she's

4    intelligent, but she's certainly not a financial person.

5    She's not someone who is trained in securities or securities

6    law or finance for that matter.  And Mr. Spivak can be very

7    demanding, but she loves him.  And they do have a child

8    together, and she's forever grateful for that.

9         She certainly has accepted her responsibility in this

10   case, and I can tell the Court that she wants to do nothing

11   more than be the best mother that she can to her now

12   7-year-old daughter -- she just turned 7 last week -- and

13   get back into what she was actually trained to do, which was

14   work in supply chain logistics, away from securities laws,

15   away from brokers, and, most of all, away from lawyers.

16        I agree with the government that incarceration would

17   not be appropriate in this case, but that's ultimately in

18   the Court's judgment.  Both of Ms. Smirnova's parents are

19   deceased now.  Mr. Spivak's parents are still alive, but

20   they're very elderly.  And, as I've said, the only sibling

21   that Ms. Smirnova has that's living is in Israel.

22        So, for all those reasons, Your Honor, I request that

23   the Court impose the proper sentence.  We've addressed some

24   of the other 3553(a) factors in our sentencing memorandum.

25        And I know that Ms. Smirnova would like to briefly

1    address the Court.

2                    THE COURT:  All right.  Thank you.

3         Ms. Smirnova, I know you provided a statement that was

4    included in the presentence report at paragraph 49, and I

5    have read that, but happy to consider anything else you'd

6    like to say as well.

7                    THE DEFENDANT:  Yes.

8         Let me know if you can't hear me.

9         Yes.  I want to refer back to the statements I made in

10   my acceptance of responsibility document, and just repeat

11   again that I consider my involvement in the events that led

12   to today a mistake and a failure and, frankly, the biggest

13   failure that I ever experienced in my life.  And I am

14   prepared to serve a sentence that you're going to impose on

15   me and learn from the mistakes and learn from this

16   experience.  And, you know, I hope to move on and never get

17   involved in anything like this again.

18        Thank you.

19                   THE COURT:  All right.  Thank you.

20        In addition to the guideline range, the Court has

21   considered the following factors, which are set forth in

22   Section 3553(a) of Title 18 of the United States Code in

23   fashioning a reasonable sentence in this case.

24        First, the nature and circumstances of the offense.

25        Ms. Smirnova pled guilty to Count 2, Conspiracy to

1    Commit Securities Fraud.  Because the Court presided over

2    the trial of Charles Scott on this count, the Court has

3    great familiarity with the nature and circumstances of the

4    offense, the scope of the fraudulent conduct, the

5    government's investigation, and the roles of the various

6    defendants.

7         In fairness, the evidence at trial understandably

8    focused on Charles Scott, so the record may differ somewhat

9    from that as it pertains to Ms. Smirnova.  However, based on

10   the evidence at trial and from the record as a whole,

11   Ms. Smirnova knew about the scheme and communicated with

12   co-conspirators such as Forrest Church to effect its ends.

13   Compared to others in the conspiracy, her role is relatively

14   minor, but by her admission, she did join the conspiracy and

15   participate in meetings to advance its ends.

16        The history and characteristics of the defendant.

17        Ms. Smirnova is 42 years old.  She married Paul Spivak

18   in 2005, and the couple has one daughter, who I believe is 7

19   years old.  Ms. Smirnova was raised in the Soviet Union

20   through very difficult political times.  Her family, like

21   many others, struggled to get by because various items were

22   not available throughout the country.  She was raised in a

23   large city in Russia, and her family lived near the city

24   center where violence was prevalent.

25        Her parents divorced when she was a young child.  And

1    her father, who was a university professor, later

2    disappeared around 1995.  There's never been a resolution to

3    her father's disappearance.

4         As a teenager she experienced a sexual assault.

5         In 2009 Ms. Smirnova became a naturalized citizen of

6    the United States.  Her mother passed away in 2023 from a

7    stroke.  She has a sister who resides in Israel.  She does

8    not have family other than her husband who resides in the

9    area.

10        Let me -- I didn't read that well.

11        She does not have family who resides in the area other

12   than her husband.  That's what I meant.

13        Ms. Smirnova is in good physical health.  She has no

14   history of substance abuse or mental health issues.

15        She graduated from college in Russia and was employed

16   in the United States at US Lighting Group in finance since

17   January 2019.  From December 2017 until then, she was a

18   stay-at-home mother.

19        And she has no prior criminal record.

20        The need for the sentence imposed.

21        Financial crimes are often complex and can span

22   multiple years.  Here the conspiracy charged in Count 2

23   lasted from 2019 to 2021.  This conspiracy charge resulted

24   from an undercover operation.  Without that operation, it is

25   not clear how long the conduct underlying that conspiracy or

1    the conspiracy charged in Count 1 might have lasted in some

2    form.

3        Although some people might think financial crimes are

4    not as serious as more conventional or violent crimes,

5    financial crimes cause significant damages to the financial

6    wellbeing or livelihood of the victims, harm the trust and

7    confidence people have in themselves, family members, and

8    the institutions which we rely to function in our society,

9    and have lasting financial and other harms that are not

10   easily corrected or remedied.

11       As counsel addressed, it is likely that a lot of the

12   blame for Ms. Smirnova's involvement in this conspiracy owes

13   to her marriage to Paul Spivak; however, recorded

14   conversations between her and the undercover agent make it

15   clear she knew the purposes of the consulting agreement and

16   the conspiracy more generally and its use for concealment of

17   the scheme.

18       Ms. Smirnova needs to be held accountable for her part

19   in the Count 2 conspiracy so that she understands the damage

20   to investors that would have resulted had her actions not

21   been discovered and an undercover operation not arranged.

22       In mitigation, Ms. Smirnova does not have a prior

23   criminal record.  She was not significantly involved in this

24   conspiracy, and she is the primary caregiver for her

25   daughter.

1          In terms of the kinds of sentences available, the

2     maximum sentence for Count 2 is five years in prison.

3          Regarding sentencing disparities, according to data

4     from the Sentencing Commission during the last five fiscal

5     years, from 2019 through 2023, there are 215 defendants with

6     the same guideline profile as Ms. Smirnova.  Of those,

7     114 -- which is 53 percent -- received a sentence of

8     imprisonment.  The average sentence was three months, and

9     the median was a sentence of probation.

10         Of the other defendants charged in this case,

11    Ms. Smirnova is the second to be sentenced.  Previously, the

12    Court sentenced Jason Arthur to a term of imprisonment of 35

13    months.  Mr. Arthur actively solicited investors as part of

14    the conspiracy, and Ms. Smirnova's role is considerably less

15    central to the conspiracy than his was, and she overall, in

16    my view, has less culpability than Mr. Arthur.

17         Regarding restitution, under federal law, restitution

18    shall be ordered in this case and will be the subject of

19    further proceedings.  In her plea agreement, Ms. Smirnova

20    agreed to pay $50,000 in restitution jointly and severally

21    with the other defendants.

22         Finally, in every case Congress directs the Court to

23    impose a sentence sufficient but not greater than necessary

24    to comply with the purposes of federal law in determining

25    the particular sentence.  In imposing sentence I've

1    considered all these factors.

2         Ms. Smirnova, having pled guilty to Count 2 of the

3    second superseding indictment and the Court being satisfied

4    that you are in fact guilty, I hereby order as follows.

5         The Court finds that the record as a whole and the

6    factors under Section 3553(a) support a variance -- that is

7    a sentence outside the advisory guideline system -- as

8    sufficient but not greater than necessary in this case for

9    the reasons already stated and because, among other reasons,

10   of your comparatively lesser role in the conspiracy and the

11   great likelihood that you will not commit further crimes.

12        Therefore, pursuant to the Sentencing Reform Act of

13   1984 and Section 3553(a), it is the judgment of the Court

14   that the defendant, Olga Smirnova, is hereby sentenced to a

15   term of three years probation with the first eight months to

16   be served on home detention.

17        Within 72 hours you shall report in person to the

18   probation office.  It's on the third floor, so I'd suggest

19   you stop there before leaving today.

20        In addition, you shall pay a fine in full immediately

21   in the amount of $40,000 through the clerk of the Court.

22   Should you be unable to pay in full immediately, the balance

23   shall be paid at the minimum rate of 10 percent of your

24   gross monthly income.  Notwithstanding establishment of a

25   payment schedule, nothing shall prohibit the United States

1     from executing or levying upon property of yours discovered

2     before or after the date of the judgment.

3          In addition, you must pay to the United States a

4     special assessment of $100, which is due immediately.

5          As I noted, you'll be ordered to pay restitution, and

6     that will be the subject of a further proceeding.

7          Mr. McCaffrey, have you gone over the mandatory and

8     standard terms of supervision as set forth in the

9     presentence report with Ms. Smirnova?

10               MR. MCCAFFREY:  Yes, Your Honor.

11               THE COURT:  And do you waive reading of the

12    mandatory and standard terms?

13               MR. MCCAFFREY:  I do, Your Honor.

14         Your Honor, with respect to restitution, my

15    understanding is it's capped at $50,000.

16               THE COURT:  Fair enough.

17               MR. MCCAFFREY:  Right.

18               THE COURT:  I think I was just reading the

19    plea agreement, but I'm not -- I'd have to go pull it back

20    up.

21               MR. MORRISON:  I think the parties have agreed

22    to jointly recommend that.  Of course, everyone understands

23    the Court may come to some other conclusion, but I don't

24    think either of us expects that the Court will come to any

25    conclusion other than the $50,000 number that the parties

1    are jointly recommending for Count 2.

2                THE COURT:  All right.  Thank you.

3         Ms. Smirnova, while on supervision, you must comply

4    with the mandatory and standard conditions that have been

5    adopted by the Court and set forth in Part D of the

6    presentence investigation and report.  And you must comply

7    with the following additional conditions.

8         First, the periodic drug testing mandated by the

9    Violent Crime Control and Law Enforcement Act of 1994 is

10   hereby suspended based on the Court's determination that you

11   pose a low risk of future substance abuse.

12        You must provide the probation officer with access to

13   any requested financial information and authorize the

14   release of any financial information.  The probation office

15   may share financial information with U.S. Attorney's Office.

16        You must not incur new credit charges or open

17   additional lines of credit without the approval of the

18   probation office.

19        You must apply all monies received from income tax

20   refunds, lottery winnings, judgments, and/or any other

21   anticipated or unexpected financial gains to the outstanding

22   court-ordered financial obligations.

23        And you must fully comply -- or fully cooperate, I

24   should say -- with the Internal Revenue Service by filing

25   all delinquent or amended returns within six months of

1    sentencing and timely file all future returns.

2         You must properly report all taxable income and claim

3    only allowable expenses on those returns.

4         You must not engage in an occupation, business,

5    profession, or volunteer activity that would require or

6    enable you to be involved with the sale and trading of

7    securities without the prior approval of the probation

8    officer, and you must not be employed or engaged in the sale

9    or trading of any over-the-counter securities without the

10   prior approval of the probation officer.

11        And you must complete 100 hours of community service

12   during the second and third years of your term of probation

13   under the supervision and direction of your probation

14   officer.

15        Ms. Smirnova, do you have any questions about the

16   conditions of supervision?

17                  MR. MCCAFFREY:  Your Honor, I do.

18                  THE COURT:  Okay.

19                  MR. MCCAFFREY:  I was --

20                  THE COURT:  I saw you communicating with her,

21   yes.

22                  MR. MCCAFFREY:  If I may.

23        First, Your Honor, with respect to the eight months of

24   home detention, she is still employed, would she be

25   permitted to go to work while under home detention, be

1   released for that purpose?

2        Also --

3             THE COURT:  Home detention generally allows

4   work release, so I don't think that's going to be an issue.

5             MR. MCCAFFREY:  Okay.

6        And she is responsible for taking her daughter to

7   school.  She's now in first grade.  So on a daily basis --

8   so taking her there and then also picking her up -- that

9   that would also be something that we could work out with

10  Probation?

11            THE COURT:  I would think you would work that

12  out with Probation.

13            MR. MCCAFFREY:  Okay.

14            MR. MORRISON:  No objection to that, Your

15  Honor.

16            MR. MCCAFFREY:  Thank you.

17            THE COURT:  Ms. Smirnova, did you have any

18  additional questions about supervision?

19            THE DEFENDANT:  No.  Thank you.

20            THE COURT:  If you violate the terms of your

21  supervision, you'll be brought before the Court, and a

22  further sanction may be imposed including a possible

23  sentence of incarceration.  Do you understand that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  The defendant has the right to

1    appeal her conviction or sentence; however, your plea

2    agreement contains a provision which waives some or all of

3    those rights.  Because you may wish to file an appeal to

4    challenge the waiver of your appeal rights or to appeal an

5    issue not waived by your plea agreement, I will advise you

6    of how to pursue an appeal despite that waiver.

7         To pursue an appeal, you must file a notice of appeal

8    within 14 days after judgment is entered in your case.  If

9    you are unable to pay the cost of an appeal, you may apply

10   for leave to waive those costs, that is called proceeding in

11   forma pauperis.  If you so request and qualify, the clerk of

12   the Court will arrange for legal representation, who will

13   prepare and file a notice of appeal on your behalf.

14        Do you understand your appeal rights?

15                    THE DEFENDANT:  Yes.

16                    THE COURT:  Do you understand what you can and

17   cannot appeal under the terms of your plea agreement?

18                    THE DEFENDANT:  Yes.

19                    THE COURT:  And do you have any questions

20   about that?

21                    THE DEFENDANT:  No.

22                    THE COURT:  Counsel, again, subject to the

23   objections you raised, which as far as I'm concerned are

24   preserved for the record, do you have any other procedural

25   or substantive objections or any arguments you've made that

1    you feel I've not adequately addressed in rendering

2    sentence?

3              MR. MORRISON:  No, Your Honor.

4         As you indicated, restitution, a specific number will

5    be chosen in a future proceeding.  I think that's the only

6    thing that hasn't been fully concluded.

7         We appreciate the Court's time and attention.  Thank

8    you.  No objections that have not been previously made.

9              MR. MCCAFFREY:  No objections, Your Honor.

10   Thank you.

11             THE COURT:  All right.  Thank you.

12        I guess a couple loose ends.

13        One, I do note that even if my guideline calculation

14   is not correct, the Court would have imposed the same

15   sentence under Section 3553(a) based on its consideration of

16   the record as a whole and the factors for the reasons set

17   forth.

18        In addition, let me just say a couple other things

19   before we adjourn for the day.

20        First, Ms. Smirnova, I do agree with much of what both

21   attorneys, including Mr. Morrison, had to say today.  You do

22   strike me as particularly intelligent, but I think here in

23   this particular instance you put your intelligence to work

24   toward a bad end that was calculated to harm the investing

25   public.  I think there's plenty of mitigation for that, and

1    I don't want to -- I think you've -- I suspect and can tell

2    that you've beaten yourself up plenty about that, I don't

3    need to dwell unduly on that.

4        I don't doubt two things:  One, that this has been a

5    difficult and stressful time and process for you; and I also

6    don't doubt that you're, in the end, a good person with a

7    good heart who will make amends and who will not be in

8    trouble again.  Your daughter's a good age; I trust you'll

9    set a good example for her going forward.  And I would be

10   quite surprised if I see you again.  So I do want to wish

11   you all the best going forward.

12       Counsel, any other issues we should address, or

13   anything else we need to take up while we're together today?

14              MR. MORRISON:  Not from the government, Your

15   Honor.

16              MR. MCCAFFREY:  No, Your Honor.  Thank you.

17              THE COURT:  In that case, the sentence is

18   hereby ordered imposed as stated; the Court will enter an

19   appropriate judgment.

20       Ms. Smirnova, good luck to you.

21       We stand adjourned.  Thank you.

22            (Proceedings concluded at 3:24 p.m.)

23                    **C E R T I F I C A T E**
         I certify that the foregoing is a correct transcript
24   of the record of proceedings in the above-entitled matter
     prepared from my stenotype notes.
25              */s/ Gregory S. Mizanin*      *February 25, 2025*
                GREGORY S. MIZANIN, RDR, CRR              DATE