IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00491 |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, | ) | |
| Defendant. | ) | |

**MOTION TO RECONSIDER ORDER DENYING MOTION FOR JUDGMENT OF ACQUITTAL OR A NEW TRIAL AND MOTION TO WITHDRAW GUILTY PLEA**

Undersigned counsel on behalf of her client, Paul Spivak, respectfully asks this Court to reconsider its order, dated February 12, 2025, denying his motions for a judgment of acquittal or, in the alternative, for a new trial, and his motion to withdraw his guilty plea. Respectfully, and for the sake of brevity, counsel addresses what she believes to be errors in the order, without waiving any of the claims raised in earlier pleadings.

I.  **Basis for Reconsideration of the Motion for a Judgment of Acquittal or, in the Alternative, for a New Trial.**

In denying this claim, the Court relies, in part, on the testimony of Forrest Church. Doc. 540, p. 5. In the sentencing memorandum filed on behalf of Mr. Church in this case, Doc. 516, p. 16, counsel for Mr. Church indicated his belief that Mr. Church's testimony was essential in proving the conspiracy element in Spivak's trial. Counsel then asked this Court to grant a four-level downward departure based on this testimony. Recently, counsel for USLG filed a lawsuit against Mr. Church's attorney for malpractice on behalf of Olga Smirnova.[1] The allegations are, briefly,

---

[1]  *Olga Smirnova v. Flannery & Georgalis LLC, Chris Georgalis, et al.*, Case No. 25CV000217, dated February 20, 2025 (located in Lake County, Ohio).

1

that Mr. Church's attorney engaged in extensive discussions with Ms. Smirnova, Mr. Spivak and USLG's CFO about the case during which they disclosed confidential case strategies, privileged legal information, and highly sensitive company information. After the parties failed to come to an agreement for representation, Church's attorney thereafter agreed to represent him. Mr. Church then took an adverse position towards Ms. Smirnova and Mr. Spivak in this litigation based in part on the information revealed to counsel during those initial communications. Counsel respectfully asks this Court to consider this additional information in assessing this motion for reconsideration.

As for the Court's additional analysis regarding Spivak's conviction for conspiracy to commit securities fraud, although being completely acquitted of the substantive counts of securities fraud, counsel submits this claim is inextricably entwined with the Government's theory of culpability on the wire fraud accounts. Counsel appreciates the Court's conclusion that *Ciminelli* is inapposite and addresses that conclusion below. But if, as counsel believes, the Government proceeded at trial with an improper theory of culpability, then, in addition to the acquitted counts, the remaining conspiracy count cannot stand. The assessment here is not whether there is "any evidence" upon which a jury could convict, but whether the conviction is "nevertheless against the weight of the evidence." *United States v. Fields*, 516 F.3d 923, 949 n. 14 (10th Cir. 2008). The Court concludes there is some evidence upon which the jury could have found Spivak guilty of conspiracy to commit securities fraud, but it is analytically difficult (if not impossible) to reconcile that with its absolute acquittal (and not merely that the jury "hung" on these counts) on every specific act of securities fraud.

But also, counsel respectfully submits the Court has erred in not sufficiently appreciating the extent to which the Government relied on the "pirates" and their "commissions" as

constituting the gravamen of its case against Spivak. As counsel argued in the initial pleading for a new trial or acquittal, the Government repeatedly argued this aspect of the case to the jury. Doc. 480, p. 7, PageID#9001.

The Court also found *United States v. Medeiros*, 2023 WL 8752921 case to be inapposite. Respectfully, Spivak disagrees. The acquittals on 29 of 31 counts do sufficiently present the case in a different light to warrant a new trial, especially in light of his argument regarding the State's improper theory of culpability based on its alleged failure on the part of Spivak to disclose information related to the commissions. The sheer numerosity of Spivak's acquittals illustrates how roundly the jury rejected the Government's case here.

Additionally, in its order, the Court found: "In any event, the jury convicted on two counts of wire fraud—each of which involved Mr. Spivak sending money to Richard Mallion, who ran the call centers to solicit money from investors to maintain the price of USLG's stock. These verdicts support the jury's verdict on Count 1 by independently establishing the elements of the conspiracy charge beyond the fact of the conspiracy and Mr. Spivak's voluntary participation in it." This is not accurate. These counts represented purchases made by Mallion of USLG stock at the registered price, and at the same price that any investor paid for the stock. This further highlights the dearth of evidence presented by the Government in making its case against Spivak.

*The Ciminelli Analysis*

Respectfully, although this Court did not charge the jury with a "right to control" instruction at issue in *Ciminelli*, the theory under which the Government proceeded in this case relied on its claim that Paul Spivak and others failed to provide information to the investors and,

3

based on that, induced them to spend money on USLG's stock.[2] This theory only makes sense if there is "the right to valuable economic information needed to make discretionary economic decisions." *Id*. at 316-17.  This is not a case where a defendant induced victims to purchase a stock for some corporation that did not exist (or was otherwise fraudulent).  USLG is a legitimate company, and investors received what they paid for.  The Government's theory is that the investors would not have purchased the stock had they known about the commissions.  This can only be criminal if the investors had the right to that information.  This is why this case is within the ambit of *Ciminelli*:  because the United States Supreme Court held in *Ciminelli* that this information (about the commissions, for example) is not a traditional property interest.  This, of course, does not mean there is never a legal remedy for the purported victims in this case—they may avail themselves of traditional state level remedies or tort law. *Ciminelli*, 598 U.S. at 315.[3]  The Court only makes clear that the federal wire fraud statute is not the proper statute upon which to base a federal prosecution.

## II.     Basis for Reconsideration of Spivak's Motion to Withdraw his Guilty Plea

Respectfully, counsel asks this Court to reconsider its order denying Spivak's motion to withdraw his guilty plea.  In its Order, the court does not mention a key consideration in Spivak's motion to withdraw the guilty plea—that the jury acquitted him of the lion's share of counts brought against him. Candidly, things did look different before the start of Phase I of the trial when

---

[2]     *See also McNally v. United States*, 483 U.S. 350 (1987) (holding the wire fraud statute do not protect intangible rights; they protect property rights only).  *See also Cleveland v. United States*, 531 U.S. 12 (2000) and *Kelly v. United States*, 590 U.S. 391 (2020) (property fraud statutes do not protect regulatory interests).

[3]     To date, no shareholders have filed a single lawsuit in connection with these events.

Spivak was faced with an enormous number of counts against him. Having the jury conscientiously reject the Government's case in nearly all respects with its acquittal of nearly all charges, Spivak's calculations changed. Spivak did not have much time to reconsider this material development in his case before he swiftly pleaded guilty the day after Phase I ended. Clearly courts should not be in the disruptive business of hastily allowing the withdrawal of guilty pleas, but under the unique circumstances of this case, it would be appropriate to allow Spivak to avail himself of the remedy that exists for those who "hastily" enter a guilty plea "with unsure heart and confused mind." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991), *cert denied*, 502 U.S. 1117 (1992).

## CONCLUSION

This Court should enter judgments of acquittal or grant a new trial, and it should allow Spivak to withdraw his guilty pleas and allow him to proceed to trial.

> Respectfully submitted,
>
> /s/ Elizabeth Franklin-Best
> Elizabeth Franklin-Best, P.C.
> 3710 Landmark Drive, Suite 113
> Columbia, South Carolina 29204
> (803) 445-1333
> elizabeth@franklinbestlaw.com

March 19, 2025.